ERNEST T. FORBES, III, DAVID J. DRUM AND WIFE, DOROTHY H. DRUM, H. B. STROUP, JR. AND WIFE, LOUISE P. STROUP, STEVE WOOLARD AND WIFE, HAZEL JEAN WOOLARD, THOMAS H. HARDER AND WIFE, ROSEMARY HARDER, CHARLES PATTON AND WIFE, MADELINE H. PATTON, WILLIAM F. HIGGS, JR., RUSSELL DUFFNER, JOHN SRONCE, WILLIAM BRANKO AND WIFE, SONIA B. BRANKO, JEFFREY J. MILLER AND WIFE, SUSAN B. MILLER, A. G. G. McWILLIAM AND WIFE, MARILYN McWILLIAM, NICHOLAS GILIBERTI, DR. MYRON L. GOTTFRIED, GARY D. McKINNEY, STEVE ZEBOS, MICHAEL MONTAPERTO AND WIFE, HORTENCIA L. MONTAPERTO, ROBERT E. HILL, KENNETH H. HENSON, DALE A. DEINES AND WIFE, JEANNE E. DEINES v. THE PAR TEN GROUP, INC., THE PROPERTY SHOP, INC., JAN C. MANSSON, WILLIAM R. LEWIS, DOUGLAS R. BEBBER, GEORGE W. MATHEWS

No. 8928SC993

(Filed 7 August 1990)

1. **Fraud § 3.3 (NCI3d) — sale of property — escrow account — summary judgment for defendants proper**

The trial court properly granted summary judgment for defendants on the issue of fraud arising from the misuse of funds from the sale of lots and memberships in a resort golf course community where plaintiffs contended that defendants had a duty to disclose and did not disclose improper escrow practices, but defendants' evidence shows that these defendants did not know that defendant Manson failed to establish escrow accounts. Before defendants have any duty to disclose information, they must possess that information; even assuming that defendants were culpably ignorant in not questioning Manson or the bank, plaintiffs failed to carry their burden of showing evidence raising a material issue of fact concerning defendants' intent to deceive them with the information.

**Am Jur 2d, Fraud and Deceit § 217.**

2. **Fraud § 4 (NCI3d) — real estate sales — escrow information — negligent misrepresentation**

Summary judgment was properly entered between some plaintiffs and defendants, and improperly entered between others, in an action arising from the misapplication of deposits from the sale of lots and memberships in a resort golf course community where all the record evidence reflects that the individual defendants, acting as agents for the corporate defendant, communicated false information that the escrow monies would be held in an interest-bearing account; none of these

defendants made any investigation to determine whether the monies were actually placed in an escrow account; there were material issues of fact concerning misrepresentations to certain plaintiffs; and other plaintiffs showed no misrepresentations to them by defendants.

**Am Jur 2d, Fraud and Deceit § 217.**

3. **Negligence § 13 (NCI3d) — negligent misrepresentation — contributory negligence — not pled — not present as a matter of law**

Defendants' failure to plead plaintiffs' contributory negligence was a bar to the issue being raised on appeal in an action arising from the misapplication of escrow funds from the sale of golf course resort property and, in any event, the record does not reveal contributory negligence as a matter of law and could not support summary judgment for defendants.

**Am Jur 2d, Fraud and Deceit §§ 251, 264.**

4. **Fiduciaries § 2 (NCI3d) — sale of resort property — misapplication of escrow deposits — sales agents as fiduciaries**

Summary judgment was properly granted for defendant sales agents on a claim of breach of fiduciary duty in an action arising from misapplication of deposits from the sale of resort property where plaintiffs contended that each defendant was a dual agent, acting for both sellers and buyers, who breached his fiduciary duty to plaintiffs, but defendants offered evidence that they did not agree to represent plaintiffs in the sales transactions, that defendants represented only the Par Ten Group, Inc. in offering the properties for sale, and plaintiffs failed to adduce evidence in response raising a material issue of fact regarding this cause of action. Plaintiffs Drum attempted to show that defendant Mathews was their agent by proffering Mathews' out-of-court statement showing that he agreed to assist plaintiffs in arranging financing for their purchase, but this evidence was insufficient as a matter of law to show Mathews' agency absent other evidence.

**Am Jur 2d, Brokers § 84.**

5. **Unfair Competition § 1 (NCI3d) — resort property sale — misapplication of deposit — unfair and deceptive trade practices**

Summary judgment was proper for some plaintiffs and improper for others on an unfair and deceptive trade practices

**FORBES v. PAR TEN GROUP, INC.**

[99 N.C. App. 587 (1990)]

claim in an action arising from the misapplication of deposits from the sale of real estate where the evidence raised material issues of fact concerning negligent misrepresentations as to some plaintiffs but not as to others. That defendants may have made misrepresentations negligently but in good faith and without intent to mislead affords no defense to an action under N.C.G.S. § 75-1.1.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

APPEAL by plaintiffs from orders entered 30 May 1989 and 8 June 1989 by *Judge Robert D. Lewis* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 15 March 1990.

*Shuford, Best, Rowe, Brondyke & Walcott, by James Gary Rowe and Patricia L. Arcuri, for plaintiff-appellants.*

*Patla, Straus, Robinson & Moore, P.A., by Harold K. Bennett, for defendant-appellees.*

GREENE, Judge.

Plaintiffs appeal the trial court's entry of summary judgment for defendants The Property Shop, Inc., William R. Lewis, Douglas R. Bebber and George W. Mathews.

The record shows that the defendants were involved in marketing a resort golf course community. Plaintiffs were purchasers of lots and memberships in the community. Defendants Lewis, Bebber and Mathews were sales agents for defendant Property Shop, Inc. ("Shop"), a real estate brokerage firm. Bebber also was president and sole stockholder of Shop. Defendant Mansson is a Swedish resort property developer, who approached Lewis in 1984 about purchasing a tract of land on which to develop the resort community for a soon-to-be-formed development corporation, defendant Par Ten Group, Inc. ("Group"). On 2 October 1984, Mansson bought the property.

In December, 1984, Group and Shop executed an agreement granting Shop the exclusive rights to market and arrange sales of the resort property lots, which lasted until approximately May, 1985, after which Shop was one of several marketing agents for the community.

. As part of the marketing of the property, Shop mailed an informational brochure to prospective buyers which included the following provision:

2. Deposit. The deposit mentioned under (1) shall be held in an interest[-]bearing escrow account with a local bank and will be applied to the purchase price at closing. Interest from said escrow account shall be payable to the PAR TEN GROUP, INC.

The contract for purchase of resort property included this provision:

2. Deposit: The said deposit shall be held in an interest[-]bearing escrow account in Asheville Federal S & L Bank (Seller will be entitled to the interest therefrom) and will be applied to the purchase price at closing. . . .

The money received as a deposit on the properties was paid to Mansson, who transferred the money into his personal checking account to pay his salary, Group's bills, and to develop other projects. Eventually, Mansson depleted most of the funds in the alleged escrow account and confessed his acts in mid-July, 1985.

Defendant Lewis signed agreements on behalf of Group with plaintiff Forbes on 28 May 1985, plaintiffs Harder on 23 November 1984, plaintiffs Patton on 25 May 1985, plaintiff Higgs on 19 January 1985, which defendant Bebber arranged, plaintiffs Branko on 11 July 1985, plaintiffs Montaperto on 14 November 1984, plaintiffs Deines on 30 May 1985, plaintiff Henson on 3 January 1985, plaintiff Hill on 3 January 1985, and plaintiffs McWilliam on 1 April 1985. Additionally, defendant Lewis informed plaintiffs Woolard that their deposit would be held in escrow in Asheville Federal, and they executed an agreement with Group on 12 January 1985, signed by Mansson and witnessed by Lewis.

Defendant Bebber dealt with plaintiff Higgs before he signed his agreement with Group, and represented to plaintiff Forbes that his deposit would be safely held in escrow in Asheville Federal. Defendant Bebber may have also dealt with plaintiffs Hill and Henson by selling them property, facts unclear from Lewis's affidavit.

Defendant Mathews sold lots to plaintiffs Drum, Stroup and Sronce. Plaintiff Drum executed an agreement signed by Mansson on 23 April 1985. Plaintiffs Stroup executed an agreement on 5 January 1989.

**FORBES v. PAR TEN GROUP, INC.**

[99 N.C. App. 587 (1990)]

Mansson apparently signed agreements between Group and: plaintiff Giliberti on 10 December 1984, which Shop's sales agent Arlene Schandler arranged, plaintiff Zebos on 5 June 1985, plaintiff McKinney on 17 May 1985, and plaintiffs Gottfried on an undesignated date.

Plaintiffs Miller signed an agreement with Group on 25 June 1985, which shows no signature by a Group representative or other person. Plaintiff Duffner signed an agreement on 4 November 1984, which shows no signature by a Group representative or other person, but which Bebber averred had been executed with Shop on 28 November 1984.

Plaintiffs brought suit to recover the deposit money from defendants, alleging that defendants committed fraudulent misrepresentation, negligent misrepresentation, unfair and deceptive trade practices, and breach of fiduciary duty in failing to comply with escrow requirements for the payments.

Defendants Lewis, Shop, Bebber and Mathews answered, denying plaintiffs' allegations. Neither defendant Mansson nor defendant Group answered. Mansson allegedly fled the country, and Group allegedly is insolvent.

In support of their motion for summary judgment, these defendants offered various affidavits, all to the effect that they at no time had any knowledge that the deposit monies were not placed in an escrow account.

In support of defendants' motion for summary judgment, defendant Bebber introduced his affidavit, averring that:

the following are the only Contracts of Sale of [resort] property obtained by . . . Shop and its associates:

| Purchaser | Date of Contract or Sale | Associate |
|---|---|---|
| Ernest T. Forbes, III | 5/28/85 | Walter McGuire —The Property Shop |
| David Drum and wife | 4/23/85 | George Mathews —The Property Shop |
| H. B. Stroupe [sic] and wife | 1/5/85 | George Mathews —The Property Shop |

FORBES  v.  PAR  TEN  GROUP,  INC.

[99 N.C. App. 587 (1990)]

| Purchaser | Date of Contract or Sale | Associate |
|---|---|---|
| Steve Woolard and wife | 1/12/85 | Ron Lewis —The Property Shop |
| Thomas Harder and wife | 11/23/84 | Arlene Schandler —The Property Shop |
| William F. Higgs, Jr. | 1/19/85 | Douglas Bebber —The Property Shop |
| Russell Duffner | 11/28/84 | Beatrice Pollock —The Property Shop |
| John Sronce | Early 1985, prior to May | George Mathews —The Property Shop |
| A. G. G. McWilliam and wife | 4/1/85 | Charles Baskerville —The Property Shop |
| Nicholas Giliberti | 12/10/84 | Arlene Schandler —The Property Shop |
| Michael Montaperto and wife | 11/14/84 | Ron Lewis —The Property Shop |
| Robert E. Hill | 1/3/85 | Ron Lewis —The Property Shop |

Plaintiffs countered with evidence of the sales brochure and the contract for purchase, both of which contained specific language that the deposit would be held in an interest-bearing escrow account in a local bank and applied to the purchase price at closing. Several plaintiffs testified that some defendants, in addition to the written information contained in the contract and brochure, orally told them that the deposit would be held in an escrow account until closing on the property.

Plaintiff Drum offered an affidavit including this averment: "Mathews . . . told me . . . that [a] deposit would be held in an escrow account until closing on the property . . . He also offered to act on our behalf in completing this transaction." The record includes a letter to Drum, in which Mathews stated:

I'll be happy to draw for your particular parcel or Nancy could do it when the time for the drawing arrives. Or, if possible, you might want to come pick your lot personally. If you are to require some financing I will be happy to help with the

FORBES v. PAR TEN GROUP, INC.

[99 N.C. App. 587 (1990)]

arrangements. Whatever is convenient with you I will endeavor to accomplish.

On 30 May 1989, the trial court entered summary judgment for Shop, Bebber and Mathews, certifying that there was no just reason for delaying appeal of judgment for these defendants pursuant to N.C.G.S. § 1A-1, Rule 54(b). On 8 June 1989, the trial court entered summary judgment for Lewis, also certifying that there was no just reason for delaying the appeal.

-----

The issues are: whether the trial court properly granted summary judgment for defendants on plaintiffs' allegations of (I) false misrepresentation; (II) negligent misrepresentation; (III) breach of fiduciary duty; and (IV) unfair and deceptive trade practices.

> Summary judgment is appropriate if the movant shows no genuine issue of material fact and that he is entitled to judgment as a matter of law. . . . An issue is material when the facts on which it is based would constitute a legal defense which would prevent a non-movant from prevailing. . . . To entitle one to summary judgment, the movant must conclusively establish 'a complete defense or legal bar to the non-movant's claim.' 'The burden rests on the movant to make a conclusive showing; until then, the non-movant has no burden to produce evidence. . . . When movant is the defendant, this rule placing the burden on the movant reverses the usual trial burdens.

*Cheek v. Poole*, 98 N.C. App. 158, 162, 390 S.E.2d 455, 458 (1990) (citations omitted). "If, however, the movant carries its burden, the opposing party must respond with specific facts showing there is a genuine issue for trial or with an excuse for not doing so." *Weeks v. N.C. Dept. of Natural Resources*, 97 N.C. App. 215, 224, 388 S.E.2d 228, 233 (1990).

I

False misrepresentation

[1] Plaintiffs contend that they presented evidence showing defendants committed fraud because defendants had a duty to disclose and did not disclose improper escrow practices to plaintiffs. We disagree.

"To withstand a motion for summary judgment on a fraud claim, the forecast of the evidence must present a genuine issue

of material fact as to each element of fraud." *Bolton Corp. v. T. A. Loving Co.*, 94 N.C. App. 392, 409, 380 S.E.2d 796, 807, *review denied*, 325 N.C. 545, 385 S.E.2d 496 (1989) (citation omitted).

The essential elements of actionable fraud are:

(1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that [the misrepresentation] resulted in damage to the injured party.

*Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 189-90, 374 S.E.2d 135, 137 (1988). Elements three and four comprise "scienter," both of which are required to show fraud. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391, *reh. denied*, 324 N.C. 117, 377 S.E.2d 235 (1989) (overruling cases in which fraud is based solely on a statement made with reckless indifference to its truth without a showing of defendant's intent to deceive plaintiff).

For actionable fraud to exist, the defendant must have known the representation to be false when making it, or the defendant must have made the representation recklessly without any knowledge of its truth and as a positive assertion. . . . This determination of truth or falsity must be made at the time of the representation.

*Fulton v. Vickery*, 73 N.C. App. 382, 388, 326 S.E.2d 354, 358, *review denied*, 313 N.C. 599, 332 S.E.2d 178 (1985) (citations omitted).

A defendant cannot "be liable for concealing a fact of which it was unaware." *Ramsey*, at 190, 374 S.E.2d at 137. If a defendant presents evidence that it did not know of the fact in issue, "the burden shifts to plaintiff to prove that defendant knew or had reason to know" the fact. *Ramsey*, at 191, 374 S.E.2d at 137.

Defendants' evidence shows that these defendants did not know that Mansson failed to establish escrow accounts at Asheville Federal. Before defendants have any duty to disclose information, they must possess the information. Plaintiffs' evidence does not refute defendants' evidence to show that these defendants knew of Mansson's

defalcations earlier in time than plaintiffs knew. In his affidavit, plaintiff McKinney stated that in December, 1985, Lewis admitted knowledge that Mansson improperly set up the escrow accounts. However, because this evidence does not show *when* Lewis had the knowledge, it raises no material issue of fact about the time period from October, 1984, when Mansson established the accounts, until July, 1985, when Investment Ringen members relayed the information it discovered and Mansson confessed his defalcations. This evidence also does not show that Lewis or another defendant knew or had reason to know that Mansson misrepresented the type of bank accounts he had opened and was withdrawing from the accounts.

Plaintiffs also contend that defendants were culpably ignorant of Mansson's acts. We determine that, assuming *arguendo* that defendants were culpably ignorant in not questioning Mansson or the bank, plaintiffs failed to carry their burden of showing evidence raising a material issue of fact concerning defendants' intent to deceive them with the information.

II

Negligent misrepresentation

[2] Plaintiffs next argue that they raised material issues of fact concerning defendants' negligent misrepresentation of the escrow information. We agree.

> One who, in the course of his business, profession or employ-ment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the infor-mation, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement of the Law 2d, *Torts* § 552 (1977); *see also Fulton,* at 388, 326 S.E.2d at 358.

> What is reasonable is, as in other cases of negligence, depend-ent upon the circumstances. It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. The question is

one for the jury, unless the facts are so clear as to permit only one conclusion.

The particulars in which the recipient of information supplied by another is entitled to expect the exercise of care and competence depend upon the character of the information that is supplied. When the information concerns a fact not known to the recipient, he is entitled to expect that the supplier will exercise that care and competence in its ascertainment which the supplier's business or profession requires and which, therefore, the supplier professes to have by engaging it. Thus[,] *the recipient is entitled to expect that such investigations as are necessary will be carefully made and that his informant will have normal business or professional competence to form an intelligent judgment upon the data obtained.*

*Id.*, comment (e) (emphasis added).

A corporation may be liable for negligence through the doctrine of respondeat superior if its agents are negligent. *Blanton v. Moses H. Cone Mem. Hosp., Inc.*, 319 N.C. 372, 374-75, 354 S.E.2d 455, 457 (1987). "[A] corporation is liable for the torts and wrongful acts or omissions of its agents or employees acting within the scope of their authority or the course of their employment." *Raper v. McCrory-McLellan Corp.*, 259 N.C. 199, 205, 130 S.E.2d 281, 285 (1963). When corporate officers or agents commit torts, the injured person " 'may hold either liable, and generally he may hold both [liable] as joint tort[-]feasors . . .' " *Palomino Mills, Inc. v. Davidson Mills Corp.*, 230 N.C. 286, 292, 52 S.E.2d 915, 919 (1949) (plaintiff purchaser may sue either a corporate seller of personal property or its officer for the tort of fraudulent misrepresentations in a contract of sale).

Negligence cases " 'are ordinarily not susceptible of summary adjudication because application of the prudent man test, or any other applicable standard of care, is generally for the jury.' " *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350 (1990) (citation omitted).

All record evidence reflects that Lewis, Bebber and Mathews, individually and acting as agents for Shop, communicated false information, that the escrow monies would be held in an interest-bearing account, and that none of these defendants made any investigation to determine whether the monies were actually placed

FORBES v. PAR TEN GROUP, INC.

[99 N.C. App. 587 (1990)]

in an escrow account. These circumstances raise a jury issue as to whether these defendants exercised reasonable care in failing to obtain correct information regarding the escrow account and in communicating false information to plaintiffs; whether plaintiffs were reasonably entitled to rely on defendants' information; and whether plaintiffs actually and justifiably relied on the information. *See Alva v. Cloninger*, 51 N.C. App. 602, 277 S.E.2d 535 (1981).

The evidence does not permit the single conclusion which is necessary to support summary judgment for defendants, that defendants acted reasonably or that defendants could not reasonably expect that plaintiffs would rely on the representations or that plaintiffs did not actually and justifiably rely on the information.

Although plaintiffs make a blanket assertion regarding these defendants' liability to all plaintiffs for allegedly negligent acts, the doctrine of negligent misrepresentation requires that we determine from the record which defendant represented information to which plaintiff to determine the reasonableness of each plaintiff's and defendant's actions.

As to defendant Lewis, record evidence raises a material issue of fact concerning Lewis's alleged negligence in making misrepresentations by brochure, statements or Group's contract to plaintiffs Forbes, Woolard, Harder, Patton, Higgs, Branko, McWilliam, Montaperto, Hill, Henson and Deines, rendering summary judgment improper. This evidence also raises a material issue of fact concerning Shop's respondeat superior liability to these plaintiffs because of Lewis's alleged negligence.

As to defendant Mathews, record evidence raises a material issue of fact concerning Mathews's alleged negligence in making misrepresentations to plaintiffs Drum, Stroup, and Sronce, so that summary judgment against these plaintiffs was improper. This evidence also raises a material issue of fact concerning Shop's respondeat superior liability to these plaintiffs because of Mathews's alleged negligence.

As to defendant Bebber, record evidence raises a material issue of fact concerning Bebber's alleged negligence in making misrepresentations to plaintiffs Forbes, Higgs, Hill and Henson. This evidence also raises a material issue of fact concerning Shop's respondeat superior liability to these plaintiffs because of Bebber's alleged negligence.

Summary judgment was properly entered for all these defendants against plaintiffs Miller, Gottfried, McKinney, and Zebos because these plaintiffs showed no misrepresentations to them by these defendants.

Summary judgment was properly entered for defendants Bebber, Mathews and Lewis against plaintiff Giliberti because plaintiff showed no misrepresentations that these defendants made to him. Summary judgment for Shop against plaintiffs Giliberti and Duffner was improper because record evidence raises a material issue of fact concerning Shop's respondeat superior liability resulting from the actions of its agents, Schandler and Pollock, who were Shop's employees not named as defendants.

Summary judgment was properly entered for defendants Bebber and Mathews against plaintiffs Woolard, Harder, Patton, Branko, McWilliam, Montaperto and Deines because they raised no material issue of fact to show any misrepresentations to them by these defendants. Summary judgment was properly entered for defendant Mathews against plaintiffs Forbes, Higgs, Hill and Henson because these plaintiffs raised no material issue of fact to show any misrepresentations to them by this defendant. Summary judgment was properly entered for defendants Lewis and Bebber against plaintiffs Drum, Stroup and Sronce because they raised no material issue of fact to show any misrepresentations to them by these defendants.

**[3]** All defendants contend in the alternative that all evidence supports a finding that each plaintiff was contributorily negligent as a matter of law. We recognize that "[t]he recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying." *Rest. of the Law* 2d, *Torts* § 552A. "This means that the plaintiff is held to the standard of care, knowledge, intelligence and judgment of a reasonable man, even though he does not possess the qualities necessary to enable him to conform to that standard." *Id.*, comment (a).

However, defendants' failure to plead plaintiffs' contributory negligence in this case is a bar to this issue being raised on appeal. N.C.G.S. § 1A-1, Rule 8(c) (1983) (contributory negligence is an affirmative defense which must be pled). In any event, record evidence does not reveal contributory negligence as a matter of law, and therefore, it could not support summary judgment for

defendants. *See Perkins v. Langdon*, 237 N.C. 159, 168, 74 S.E.2d 634, 642 (1953) ("the circumstances must be such as to impose on the person sought to be charged a duty to make inquiry").

## III

### Breach of fiduciary duty

[4] Each plaintiff contends that each defendant was a "dual agent," acting for both Group-sellers and plaintiff-buyers, who breached his fiduciary duty to plaintiffs. Plaintiffs Drum specifically contend that defendant Mathews was their agent for purchasing property from Shop. We disagree.

"[A] broker representing a purchaser or seller in the purchase or sale of property owes a fiduciary duty to his client based upon the agency relationship itself." *Kim v. Professional Business Brokers Ltd.*, 74 N.C. App. 48, 51-52, 328 S.E.2d 296, 299 (1985) (citation omitted).

A principal-agent relationship arises upon two essential elements: "(1) [a]uthority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." *Colony Assos. v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 637, 300 S.E.2d 37, 39 (1983). "An agency can be proved 'generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy. . . .'" *Id.*, at 638, 300 S.E.2d at 39 (citation omitted). "[N]either the fact nor the extent of an agency relationship can be proved by the out-of-court statements of an alleged agent." *Dailey v. Integon Ins. Corp.*, 75 N.C. App. 387, 399, 331 S.E.2d 148, 156, *review denied*, 314 N.C. 664, 336 S.E.2d 399 (1985) (citations omitted). "[S]uch statements may be considered as evidence on the question of agency when (1) the fact of agency appears from other evidence *and* (2) the statements were within the agent's actual or apparent authority." *Id.* (emphasis added).

"Whether a principal-agent relationship exists is a question of fact for the jury when there is evidence tending to prove it; it is a question of law for the court if only one inference can be drawn from the facts. *Smock v. Brantley*, 76 N.C. App. 73, 75, 331 S.E.2d 714, 716, *review denied*, 315 N.C. 590, 341 S.E.2d 30 (1986).

Defendants offered evidence that they did not agree to represent plaintiffs in the sales transactions and that defendants represented only Group in offering the properties for sale. In response to this evidence, plaintiffs failed to adduce evidence raising a material issue of fact regarding this cause of action. Only plaintiffs Drum attempted to show that defendant Mathews was their agent. Plaintiffs Drum proffered Mathews's out-of-court statement showing that Mathews agreed to 'assist' plaintiffs in arranging financing for their purchase. As a matter of law, this evidence is insufficient to show Mathews's agency absent other evidence tending to show the fact of agency. No other evidence tends to show that Mathews was plaintiffs' agent.

## IV

### Unfair and deceptive trade practices

[5] Plaintiffs contend that they raised a material issue of fact that defendants' alleged acts of fraud possessed the tendency or capacity to mislead plaintiffs, or created the likelihood of deception. We agree.

> 'Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . . [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required. . . . [T]he consumer need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception . . .'

*Love v. Keith*, 95 N.C. App. 549, 554, 383 S.E.2d 674, 677 (1989) (citation omitted); N.C.G.S. § 75-16. "In essence, '[a] party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.'" *Warfield v. Hicks*, 91 N.C. App. 1, 8, 370 S.E.2d 689, 693, *review denied*, 323 N.C. 629, 374 S.E.2d 602 (1988). Whether defendants committed the alleged acts "'is a question of fact for the jury'" and, if so, whether the "'proven facts constitute an unfair or deceptive trade practice'" is a question of law for the court. *Love*, at 554, 383 S.E.2d at 677 (citation omitted).

## FORBES v. PAR TEN GROUP, INC.

[99 N.C. App. 587 (1990)]

That defendants may have made these misrepresentations negligently and in good faith, in ignorance of their falsity, and without intent to mislead, affords no defense to an action under N.C.G.S. § 75-1.1. *See generally Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981); *see also Bernard v. Central Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 314 S.E.2d 582, *review denied*, 311 N.C. 751, 321 S.E.2d 126 (1984); *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 471, 343 S.E.2d 174, 180 (1986) ("[e]ven a truthful statement may be deceptive if it has the capacity or tendency to deceive"). Furthermore, we note that any alleged contributory negligence by plaintiffs is irrelevant in an action governing conduct subject to Chapter 75. *Winston Realty Co., Inc. v. G.H.G., Inc.*, 314 N.C. 90, 94-95, 331 S.E.2d 677, 680 (1985). Recovery according to Chapter 75 is limited to those situations when a plaintiff can show that plaintiff detrimentally relied upon a statement or misrepresentation and he or she "suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Pearce*, at 471, 343 S.E.2d at 180.

Therefore, since the evidence raises material issues of fact concerning negligent misrepresentation, the jury determines whether defendants committed the alleged acts, and if so, the trial court determines whether the proven facts constitute unfair or deceptive trade practices.

Because plaintiffs alleged that the unfair and deceptive acts are defendants' alleged negligent misrepresentations, our determinations concerning the court's entry of summary judgment set out in the negligent misrepresentation cause of action, section II above, also apply to this cause of action.

In summary, we affirm the trial court's grant of summary judgment on the issues of fraudulent misrepresentation and breach of fiduciary duty for each defendant.

We affirm the court's grant of summary judgment on plaintiffs' claims of negligent misrepresentation and unfair or deceptive trade acts (1) for each defendant against plaintiffs Miller, Gottfried, McKinney and Zebos; (2) for defendants Bebber, Mathews and Lewis against plaintiffs Giliberti; (3) for defendants Bebber and Mathews against plaintiffs Woolard, Montaperto, Harder, Patton, Branko, McWilliam and Deines; (4) for defendant Mathews against plaintiffs Forbes, Hill, Higgs and Henson; (5) for defendants Lewis and Bebber against plaintiffs Drum, Stroup and Sronce.

N.C. DEPT. OF CORRECTION v. HODGE

[99 N.C. App. 602 (1990)]

We vacate entry of summary judgment on the issues of negligent misrepresentation and unfair and deceptive trade practices (1) against plaintiffs Woolard, Harder, Patton, Branko, McWilliam, Montaperto and Deines for defendants Shop and Lewis, (2) against plaintiffs Forbes, Hill, Higgs, and Henson for defendants Shop, Bebber and Lewis, (3) against plaintiffs Drum, Stroup and Sronce for defendants Shop and Mathews, (4) and against plaintiffs Giliberti and Duffner for defendant Shop, and remand this case for trial on these issues.

Affirmed in part, vacated and remanded in part.

Judges WELLS and EAGLES concur.