WILLIAM C. ERLER, D/B/A WEST END OFFICE BUILDING AND HUNTER TEXTBOOKS, INC., PLAINTIFFS V. AON RISKS SERVICES, INC. OF THE CAROLINAS (FORMERLY ROLLINS, HUDIG HALL OF THE CAROLINAS, INC.) AND SUSAN COTHREN, DEFENDANTS

No. COA99-1274

(Filed 29 December 2000)

## 1. Collateral Estoppel and Res Judicata— claim preclusion— rights and interests do not rise to level of similarity necessary

Plaintiff insured is not barred by claim preclusion from bringing suit against defendants for coverage provided under a flood insurance policy merely based on the fact that plaintiff's previous suit in federal court was voluntarily dismissed, because the rights and interests of the parties in this case do not rise to the level of similarity necessary when plaintiff's claim in the federal action was dependent on the lower floor being classified as other than a basement, whereas in the present action plaintiff concedes that the lower floor should have been classified as a "basement," but that the flood insurance agent misrepresented that it was not a "basement."

## 2. Evidence— insurance policy coverage—stipulations— existence of policy

Plaintiff is not barred from introducing evidence that the National Flood Insurance Program (NFIP) policy did not provide coverage for the contents located on the lower floor of the pertinent building even though plaintiff stipulated to the validity of the NFIP policy in the pretrial order, because the stipulations only establish the existence of the policy at the time of the loss.

## 3. Insurance— negligent misrepresentation—requested instruction—expert testimony—definition of "basement"

The trial court did not err in an action arising out of an insurance agent's alleged negligent misrepresentation by denying defendants' request for an instruction that the determination of whether the lower floor is a "basement" required the flood insurance agent to exercise specialized knowledge of the National Flood Insurance Program's complex definition and thus required expert testimony to establish the standard of care, because the

issue is one that the jury would be able to decide based on common knowledge and experience.

**4. Damages and Remedies— method of calculation—"perpetual inventory"**

The trial court did not err in an action to recover proceeds from a flood insurance policy by concluding that the evidence of damages presented by plaintiff's method for counting the damaged inventory was sufficient to support the jury's verdict, because the evidence was not so speculative as to be inadmissible when there was evidence of plaintiff's damages based on "perpetual inventory" and also evidence that the loss calculation should have been based on an actual count.

**5. Negligence— contributory—issue properly submitted to jury**

The trial court did not err in an action to recover proceeds from a flood insurance policy by concluding that the evidence does not establish plaintiff's contributory negligence as a matter of law and that the issue was properly submitted to the jury.

**6. Trials— improper mention of insurance—objection sustained—curative instruction—jury presumed to act properly**

The trial court did not abuse its discretion by failing to order a new trial after plaintiff's counsel told the jury that defendant was one of the largest insurance brokers in the world with offices in Chicago and that it would pay any judgment in favor of plaintiff, because: (1) the trial court sustained defendants' objection and instructed the jury to disregard the argument; and (2) the jury is presumed to have acted properly and disregarded the statements.

**7. Unfair Trade Practices— insurance—motion to dismiss properly granted**

The trial court did not err by dismissing plaintiff's claim of unfair and deceptive trade practices under N.C.G.S. §§ 75-1.1 and 58-63-15(1) based on defendants' actions which purported to expand plaintiff's existing insurance policy to cover inventory that was uninsurable under the policy, because: (1) defendants stood to gain very little from their misleading conduct which was limited to this plaintiff; (2) defendants' actions cannot be characterized as immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; (3) the effect of defendants'

ERLER v. AON RISKS SERVS., INC.

[141 N.C. App. 312 (2000)]

actions in the marketplace would be negligible; and (4) no unfair advantage was to be gained from defendants' actions since the flood insurance sought by plaintiffs was not available among competing insurers.

Appeal by plaintiffs and defendants from judgment entered 27 April 1999 by Judge William H. Freeman in Forsyth County Superior Court. Heard in the Court of Appeals 12 September 2000.

*Moore & Brown, by B. Ervin Brown, II and James S. Gibbs, Jr., for plaintiffs.*

*Everett, Gaskins, Hancock & Stevens LLP, by Hugh Stevens, Paul C. Ridgeway, and K. Matthew Vaughn, for defendants.*

WALKER, Judge.

In 1984, plaintiffs purchased a building at 823 Reynolda Road in Winston-Salem. This building contains three floors and sits on a sloped grade such that the front entrance opens into the second floor. The first, or lowest, floor is accessible from the rear through a garage door and rear entrance door. Plaintiffs used this lower floor as an inventory storage area. In June of 1996, the building's lower floor was flooded during a storm, and much of plaintiffs' inventory of textbooks was destroyed. Plaintiffs then contacted defendant Susan Cothren (Cothren), an employee of defendant Aon Risk Services (Aon), who wrote flood insurance policies and inquired about expanding their current National Flood Insurance Program (NFIP) policy to cover the contents of the lower floor.

The Standard Flood Insurance Policy (SFIP), issued by the Federal Emergency Management Agency (FEMA), allows coverage to be expanded to "contents" but excludes contents stored in a "basement." A "basement" is defined by the NFIP as "any area of the building having its floor subgrade on all sides." Based on a description of the building given to Cothren by plaintiffs, Cothren initially informed plaintiffs on 17 July 1996 that she believed the lower floor was not a "basement." On 18 July 1996, Cothren visited the building, and after speaking with a representative of the NFIP, she confirmed to plaintiffs that the lower floor was not a "basement" and that their insurance could be expanded to cover the contents of that floor. Cothren based this advice on the fact that the lower floor had a garage door which opened out onto the driveway, thereby making it a "walkout." Cothren believed that a "walkout" was classified separately from a

ERLER v. AON RISKS SERVS., INC.

[141 N.C. App. 312 (2000)]

"basement" and thus eligible for contents coverage. In her testimony, Cothren admitted that the SFIP does not contain such an exception for a "walkout." In August 1996, plaintiffs' application for expanded coverage was accepted by the NFIP and plaintiffs began paying an additional premium.

In May 1998, plaintiffs' building again flooded destroying the inventory located on the lower floor. Plaintiffs valued this loss of inventory at $307,958.00 and reported the loss to the NFIP who sent a claims adjuster, Eddie Adams, to examine the damage. Mr. Adams consulted an engineer, John Gardner, who examined the building and determined that the lower floor was a "basement" because it "is below the elevation of the grade on all sides." Based on this determination, the NFIP denied plaintiffs' claim on the basis that the lower floor was in fact a "basement" and that there was no coverage for contents in basement areas. Plaintiffs subsequently filed suit against Aon and Cothren alleging negligent misrepresentation, unfair and deceptive trade practices, and *respondeat superior*. At trial, the trial court granted defendants' motion for a directed verdict as to plaintiffs' claim of unfair and deceptive trade practices, and submitted issues on negligent misrepresentation and contributory negligence. The jury answered the issues in favor of the plaintiffs and returned a verdict in the amount of $280,001.

[1] We first address defendants' assignments of error. After plaintiffs filed the present lawsuit, they filed an action against FEMA in federal court seeking payment for the loss under the policy. FEMA filed a motion to dismiss on the basis that the proof of claim was not timely filed and that plaintiffs' policy did not cover contents stored in the lower floor because it was classified as a "basement." Plaintiffs then voluntarily dismissed the federal action. Defendants claim this dismissal prevented plaintiffs from obtaining a judicial determination on whether the policy provided coverage and thus "constitutes a waiver and/or estoppel that bars their claims against the defendants as a matter of law." In response, plaintiffs assert that when FEMA denied their claim, plaintiffs dismissed that action only after their own experts concluded that the lower floor was a "basement."

In support of this action, plaintiffs contend the following general rule applies:

> It is not necessary for insured, in order to recover from the broker or agent, to show that he has sued the insurance company, it being sufficient to show that the policy is defective or invalid and

that the company has refused to pay either in whole or in part. The refusal to cover the loss may be inferred from the insurance company's failure to pay claims or to respond to insured's demand for payment.

44 C.J.S. *Insurance* § 216 (1993).

Plaintiffs are not barred from bringing suit against defendants merely because their previous suit was voluntarily dismissed. For plaintiffs' current claim to be barred, defendants must show (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits. *Hogan v. Cone Mills Corp.*, 63 N.C. App. 439, 442, 305 S.E.2d 213, 215 (1983). Claim preclusion only arises in actions between the same parties or those "so identified in interest as to represent the same legal right. Privity is not established by the mere presence of a similar interest in a claim, nor by the fact that the previous adjudication may affect the subsequent party's liability." *Kaminsky v. Sebile*, 140 N.C. App. 71, 81, 535 S.E.2d 109, 115-16 (2000).

In the case at bar, defendants have different interests than those of FEMA. Plaintiffs' claim in the federal action was dependent on the lower floor being classified as other than a "basement." Whereas, in the present action, plaintiffs concede that the lower floor should have been classified as a "basement" but contend that Cothren misrepresented that it was not a "basement." Thus, the rights and interests of the parties in these cases do not rise to the level of similarity necessary to invoke claim preclusion.

[2] Defendants further argue that plaintiffs stipulated to the validity of the NFIP policy in the pre-trial order, thus barring them from introducing evidence that the policy did not provide coverage for the contents located on the lower floor as required to maintain this action. The stipulations in the pre-trial order state, in pertinent part:

> h. A NFIP policy, with coverage for contents located on the lower level of the Hunter Textbooks building, was in force during the month of May, 1998.

> i. The amount of insurance for contents covered by the flood insurance policy was $400,000.

Defendants assert that these stipulations conclusively establish that the policy at issue was valid and therefore bars these claims.

ERLER v. AON RISKS SERVS., INC.

[141 N.C. App. 312 (2000)]

However, we conclude these stipulations only establish the existence of the policy at the time of the loss.

[3] Defendants' second assignment of error is that insufficient evidence exists to support a finding that Cothren negligently misrepresented to plaintiffs that the lower floor was not a "basement" within the meaning of the NFIP policy. Our Supreme Court has held "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), *reversed on other grounds*, 329 N.C. 646, 407 S.E.2d 178 (1991); *see also Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 511 S.E.2d 309 (1999). Defendants argue that plaintiffs failed to prove either that the representations were false or misleading or that Cothren failed to exercise reasonable care in forming these representations.

Plaintiffs presented the testimony of three witnesses that the lower floor was a "basement." Ed Stout, a civil engineer and land surveyor, testified that the lower floor is a basement because it is "below the surface . . . [on] all four sides." Similarly, John Garner, a civil, structural engineer who investigates claims of structural losses for the NFIP, testified that the lower level was subgrade on all four sides, thus classifying it as a "basement." Finally, Eddie Adams, an independent adjuster, testified that he is certified by FEMA to make a determination of whether an area should be classified as a "basement." Further, he testified that he had handled more than 1,100 flood claims for FEMA and that thirty to forty claims each year involve NFIP's definition of a "basement." Mr. Adams stated that he believed the lower floor was a basement and that Cothren should have known it was a basement. This evidence supports a classification of the lower floor as a "basement" within the meaning of the NFIP policy.

Nevertheless, defendants contend that plaintiffs failed to present sufficient evidence of negligent misrepresentation because they did not offer evidence of the standard of care to which Cothren should be held. Defendants argue that the determination of whether the lower floor is a "basement" required Cothren to exercise specialized knowledge of the NFIP's complex definition, thus expert testimony was necessary to establish a standard of care. The trial court denied defendants' request for such instruction and instead

ERLER v. AON RISKS SERVS., INC.

[141 N.C. App. 312 (2000)]

instructed the jury to find that Cothren failed to exercise "reasonable care" meaning "that degree of care, knowledge, intelligence and judgment which a prudent person would use under the same or similar circumstances."

In the context of legal and medical malpractice, this Court has stated that "[e]xpert testimony is not required, however, to establish the standard of care, failure to comply with the standard of care, or proximate cause, in situations where a jury, based on its common knowledge and experience, is able to decide those issues." *Little v. Matthewson,* 114 N.C. App. 562, 567, 442 S.E.2d 567, 570-71 (1994). This Court went on to state that the "common knowledge exception" is applicable in situations where the actions at issue are "of such a nature that the common knowledge of laypersons is sufficient to find the standard of care required, a departure therefrom, or proximate causation." *Id.* at 568, 442 S.E.2d at 571. In applying these principles to this case, we conclude that the issue of whether Cothren negligently misrepresented to plaintiffs that the lower floor qualified for contents coverage is an issue which the jury, based on "common knowledge and experience," would be able to decide.

**[4]** Defendants' next assignment of error is that the evidence of damages presented by plaintiffs was insufficient to support the jury's verdict. In particular, defendants claim that the method used for counting the damaged inventory was inaccurate. At trial, plaintiffs presented the testimony of Doug Johnson, Hunter Textbooks' accountant since 1991, who testified that he had developed an inventory accounting method that involved keeping a "perpetual inventory" whereby the quantity and cost of each book was entered into a computer database as the costs were incurred. Thus, plaintiffs could determine the approximate value of their inventory at any given time. He further testified that the damages amount claimed by the plaintiffs was derived by comparing the value of the inventory after the flood to the value of the inventory before the flood as determined by the "perpetual inventory" in the computer database.

Defendants argue that this method is inaccurate and that damages should have been based on an actual count of damaged books. After the flood, plaintiffs hired Mid-South Disaster Response to assist in the clean-up. Mid-South conducted an actual count of the books as they were discarded under plaintiffs' supervision. However, Doug Johnson testified that he did not completely rely on these figures because "the staff did not feel like they were counted very well."

Defendants assert that if the damages were based on the actual count, they would be significantly lower than those based on "inventory reconciliation."

"To be entitled to compensatory damages plaintiff must show . . . the amount of loss with reasonable certainty." *Phillips v. Insurance Co.*, 43 N.C. App. 56, 58, 257 S.E.2d 671, 673 (1979). "[W]here actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed." *Id.* at 58-59, 257 S.E.2d at 673. Here, there was evidence of plaintiffs' damages based on their "perpetual inventory" and evidence that the loss calculation should have been based on an actual count. Plaintiffs' evidence was not so speculative as to be inadmissible. Thus, sufficient evidence existed to support the jury's award of damages.

**[5]** In the record on appeal, the defendants assigned as error the trial court's exclusion of certain exhibits which they claim adversely impacted their defense of contributory negligence. However, defendants now confine their argument to the contention that the plaintiffs were contributorily negligent as a matter of law. The issues of proximate cause and contributory negligence are usually questions for the jury. *Lamm v. Bissette Realty*, 327 N.C. 412, 395 S.E.2d 112 (1990). Only if the evidence, considered in the light most favorable to the plaintiff, affirmatively shows contributory negligence "so clearly that no other conclusion can be reasonably drawn therefrom" is the defendant entitled to judgment as a matter of law. *Wallsee v. Water Co.*, 265 N.C. 291, 297, 144 S.E.2d 21, 26 (1965). After review, we agree with the trial court that the evidence does not establish contributory negligence as a matter of law and the issue was properly submitted to the jury.

**[6]** Lastly, defendants argue the trial court abused its discretion by failing to order a new trial after an improper jury argument by plaintiffs' counsel. Specifically, defendants assert that plaintiffs' counsel told the jury that Aon was one of the largest insurance brokers in the world with offices in Chicago and that they would pay any judgment in favor of plaintiffs. Although the trial court sustained defendants' objection and instructed the jury to disregard the argument, defendants argue that since the jury awarded damages, the improper argument can be presumed to have prejudiced the deliberations.

In the case of *Fidelity Bank v. Garner*, 52 N.C. App. 60, 277 S.E.2d 811 (1981), plaintiff's counsel improperly referred to matters

outside the record in his closing remarks to the jury that were poten-
tially prejudicial. Defendant made a motion to strike the statement,
which was allowed, and the judge instructed the jury that the argu-
ment was improper and therefore should be disregarded. In denying
plaintiff's motion for a mistrial, this Court stated that while:

> [P]laintiff's counsel should not have made such a remark . . . the
> record indicates that upon hearing the remark the court took the
> necessary steps to correct the impropriety. When a jury is
> instructed to disregard improperly admitted testimony, the pre-
> sumption is that it will disregard the testimony.

*Fidelity Bank* at 65, 277 S.E.2d at 814.

In the case at bar, defendants immediately objected to the state-
ments about Aon by plaintiffs' counsel. Their objection was sustained
and curative instructions were given to the jury. Thus, the presump-
tion is that the jury acted properly and disregarded the statements of
plaintiffs' counsel. As a result, we find the trial court did not abuse its
discretion in denying defendants' motion for a new trial.

[7] The plaintiffs assign as error the trial court's dismissal of their
claim of unfair and deceptive trade practices on two grounds. First,
plaintiffs rely on this Court's holding in *Forbes v. Par Ten Group,
Inc.*, 99 N.C. App. 587, 394 S.E.2d 643 (1990), *rev. denied*, 328 N.C. 89,
402 S.E.2d 824 (1991), to establish that defendants' conduct
amounted to an unfair and deceptive trade practice. In order to prove
an unfair and deceptive trade practice, plaintiffs must show that
defendants engaged in "unfair or deceptive acts or practices in or
affecting commerce." N.C. Gen. Stat. § 75-1.1 (1999). Plaintiffs cite
*Forbes* in support of the proposition that defendants' misrepresenta-
tions are not exempt from Chapter 75 merely because they were
made "negligently and in good faith, in ignorance of their falsity, and
without intent to mislead." *Forbes* at 601, 394 S.E.2d at 651.

In *Forbes*, the plaintiffs were purchasers of lots and memberships
in a resort community. They brought suit against the community's
developers, sales agents, and brokerage firm for fraudulently trans-
ferring the plaintiffs' property deposits into the developer's private
checking account in order to pay his salary. In reversing the trial
court's grant of summary judgment in favor of the defendant, this
Court stated:

> [w]hether a trade practice is unfair or deceptive usually depends
> upon the facts of each case and the impact the practice has in the

marketplace. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers . . . [i]n essence, a party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.

*Forbes* at 600, 394 S.E.2d at 650.

We find the facts here distinguishable from *Forbes*. Defendants' actions purported to expand plaintiffs' existing insurance policy to cover inventory that was uninsurable under the policy. Defendants stood to gain very little from their misleading conduct which was limited to these plaintiffs. We cannot characterize defendants' actions as "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* Furthermore, the effect of defendants' actions in the marketplace would be negligible.

In addition, N.C. Gen. Stat. § 58-63-15(1)(1999) defines unfair methods of competition and deceptive acts or practices in the business of insurance. Since the flood insurance sought by plaintiffs was not available among competing insurers, no unfair advantage was to be gained from defendants' actions. Based on the foregoing reasons, we find no error in the trial.

No error.

Judges LEWIS and HUNTER concur.