An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-148

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

RANDALL DYKES and wife TAMARA
DYKES,
       Plaintiffs,

       v.                          Lee County
                                   No. 12 CVS 867
WILLIAM MORRIS LONG and wife VICKY
LONG,
       Defendants.


       Appeal by plaintiffs from order entered 28 October 2013 by Judge C. Winston Gilchrist in Lee County Superior Court. Heard in the Court of Appeals 20 May 2014.

       *Foyles Law Firm, PLLC, by Jody Stuart Foyles, for plaintiffs-appellants.*

       *Anna S. Lucas for defendants-appellees.*


       HUNTER, Robert C., Judge.


       Randall and Tamara Dykes ("plaintiffs") appeal from order entered 28 October 2013 granting summary judgment in favor of Morris and Vicky Long ("defendants") on plaintiffs' fraud claim. On appeal, plaintiffs argue that summary judgment was improperly entered in defendants' favor because genuine issues of material

fact existed as to whether defendants made a false representation with intent to deceive.

After careful review, we affirm the trial court's order.

**Background**

Plaintiffs entered into a contract on 10 January 2007 to buy defendants' home at 7603 Villanow Drive in Sanford, North Carolina. Closing took place on 18 May 2007. In the Residential Property Disclosure Statement ("the disclosure statement") signed by defendants in August 2006 and delivered to plaintiffs before purchase, defendants indicated that they did not know of any problems with the patio, deck, or other structural components of the house. A licensed home inspector hired by plaintiffs found no problems with the deck or front porch when he examined the home in early 2007. In his report, the inspector wrote "[t]he front porch appears to be in acceptable condition."

In the summer of 2011, plaintiffs discovered cracking in the foundation of the front porch. They hired a structural engineer to assess the damage. He determined that the front porch had settled about two inches into the foundation and had rotated away from the residence, causing cracks to the front and right porch foundation wall. He also noticed that previous

mortar work and brick repair had been done to the porch. In his opinion, the previous work done on the porch did not adequately address the structural cause of the damage.

On 2 August 2012, plaintiffs brought suit against defendants and sought punitive damages for fraud and unfair or deceptive practices.[1] They claimed that by representing no knowledge of any structural problems to the porch or deck in the disclosure statement, defendants knowingly and fraudulently induced plaintiffs into buying their home.

Defendants filed an answer on 20 August 2012 denying the allegations in the complaint. Both defendants provided deposition testimony during discovery. Mr. Long testified that after having the house built in 1994, he discovered cracks in the porch in 1995. He hired contractors to address the problem; they installed angle iron and sheet metal before pouring a new slab of concrete. The contractors told defendants that the structural issues with the porch were repaired and they would not have any further problems. Later, in 1996 or 1997, defendants paid for a brick mason to replace some cracked bricks and mortar, which they characterized as a cosmetic rather than structural issues caused by the previous foundation shift.

---

[1] Plaintiffs took voluntary dismissal of the unfair or deceptive practices claim on 15 October 2012.

After the structural repairs done to the porch in 1995, defendants never noticed any further problems with structure of the porch or deck.

Defendants put their house on the market and signed the disclosure statement in August 2006, roughly ten years after the structural repairs were made. The exact wording of the representation defendants made was that they did not "know of any problem (malfunction or defect) with [the] . . . foundation, slab . . . patio, deck, or other structural components including any modifications to them." When asked during his deposition why defendants did not answer "yes" to this question, Mr. Long testified that he thought the question was only asking about current or ongoing problems.

Defendants' motion for summary judgment came on for hearing on 9 September 2013. Defendants argued that plaintiffs put forth no evidence tending to show there was a problem with the house when it was sold in 2007, or if there was a problem, that defendants knew of it. The trial court granted defendants' motion for summary judgment, and plaintiffs filed timely notice of appeal from that order.

**Discussion**

**I. Defendants' Motion for Summary Judgment**

Plaintiffs' sole argument on appeal is that the trial court erred by granting summary judgment for defendants where genuine issues of material fact existed as to whether defendants knew of a structural defect when they signed the disclosure statement. We disagree.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013). "In a motion for summary judgment, the evidence presented to the trial court must be . . . viewed in a light most favorable to the non-moving party." *Howerton v. Arai Helmet, Ltd.,* 358 N.C. 440, 467, 597 S.E.2d 674, 692 (2004). This Court reviews an order granting summary judgment *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

The elements of fraud in North Carolina are: "(i) false representation or concealment of a material fact, (ii) reasonably calculated to deceive, (iii) made with intent to deceive, (iv) which does in fact deceive, [and] (v) resulting in damage to the injured party." *Deans v. Layton*, 89 N.C. App.

358, 366-67, 366 S.E.2d 560, 565-66 (1988). In order to survive a motion for summary judgment on a fraud claim, the plaintiff must forecast evidence that shows: (1) the defendant made a definite and specific representation that was materially false; (2) the defendant made the representation with knowledge of its falsity; and (3) the plaintiff reasonably relied on the representation to his detriment. *Kent v. Humphries*, 50 N.C. App. 580, 588, 275 S.E.2d 176, 182, *aff'd*, 303 N.C. 675, 281 S.E.2d 43 (1981). "A defendant cannot be liable for concealing [or falsely representing] a fact of which it was unaware." *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 594, 394 S.E.2d 643, 647 (1990) (internal quotation marks omitted). "If a defendant presents evidence that it did not know of the fact in issue, the burden shifts to plaintiff to prove that defendant knew or had reason to know the fact." *Id.* (internal quotation marks omitted). "The required scienter for fraud is not present without both knowledge [of a material fact] and an intent to deceive, manipulate, or defraud." *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 745, 600 S.E.2d 492, 498 (2004).

Plaintiffs argue that defendants made a false representation or concealment of a material fact by filling out

the disclosure statement. Specifically, they argue that the problems plaintiffs experienced in 2011 were substantially similar to those experienced by defendants in 1995, and because defendants knew of these issues and failed to either ensure that they were adequately addressed or alert plaintiffs as to their existence, there is a genuine issue of material fact as to whether defendants made a false representation with the required intent to deceive. Plaintiff's argument is unfounded.

First, even taking the evidence in the light most favorable to plaintiffs, *Howerton,* 358 N.C. at 467, 597 S.E.2d at 692, they have put on no forecast of evidence that there was a structural problem with the porch when defendants signed the disclosure statement in 2006. Defendants testified that they hired contractors to fix the porch when they experienced structural problems in 1995. They also fixed cosmetic problems such as cracked bricks and mortar caused by the settling of the foundation. After the new concrete slab was poured, defendants were advised to put in cement caulk between the porch and the house to keep debris from collecting, which they did. Aside from this work, defendants did nothing more to the porch or the foundation, and they both testified that they had no further problems with the porch in the roughly ten years between when

this work was performed and when they sold the house to plaintiffs. Although plaintiffs point to the fact that there was a loose column on the porch, Mr. Long testified that the columns were "more visual aids than anything else" and were obviously not structural in nature. He said that it "wasn't like there was a bunch of weight and there wasn't no weight," but rather the column was always a little loose and didn't change over time. Mr. Long never felt like the column was a big enough issue to warrant fixing. When defendants sold their house to plaintiffs, a licensed inspector examined the porch and noted that it appeared to be in acceptable condition. Plaintiffs did not notice any issues with the porch until 2011, roughly four years after buying the home from defendants. Thus, the structural repairs that defendants made to the porch lasted for approximately sixteen years before any further problems became apparent. In sum, there is no evidence indicating that a structural problem existed when defendants signed the disclosure statement in 2006.

Second, even if there was a structural problem with the house in 2006, plaintiffs have failed to carry their burden of proving that defendants were aware of this defect when they signed the disclosure statement. The disclosure statement only

asked whether defendants knew of any existing problems, not whether they had ever made repairs to fix previous issues. Defendants testified that they knew of no problems with the porch or structural components of the house when they signed the disclosure statement; this testimony was corroborated by plaintiffs' inspector's report indicating that the porch appeared to be in acceptable condition. Thus, the burden shifted to plaintiffs to prove that defendants knew or had reason to know of the structural defect, if one existed. *Forbes*, 99 N.C. App. 587, 594, 394 S.E.2d 643, 647. Again, taking the evidence in the light most favorable to plaintiffs, they have failed to meet this burden. The undisputed evidence shows that defendants responded to the structural issues in 1995 and were assured by their contractors that the problems were permanently fixed. Defendants both testified that they experienced no more problems with the porch during their ownership of the house, and plaintiffs' inspector observed no damage when he examined the house in early 2007. Thus, there is no evidence indicating that defendants knew or should have known about a structural defect when they signed the disclosure statement in 2006, if such a defect even existed.

Based on the foregoing, we conclude that plaintiffs failed to forecast evidence that defendants either made a definite and specific representation that was materially false or had knowledge of its falsity. Accordingly, summary judgment for defendants was proper. *See Uzzell v. Integon Life Ins. Corp.*, 78 N.C. App. 458, 337 S.E.2d 639 (1985); *see also Taylor v. Gore*, 161 N.C. Ap. 300, 588 S.E.2d 51 (2003) (affirming summary judgment for the defendants where they falsely represented that the land they sold was not in a flood zone because the plaintiffs could not forecast evidence that the defendants knew or had reason to know the land was in the flood zone when they made the misrepresentation).

## Conclusion

After careful review, we affirm the trial court's order granting summary judgment in favor of defendants.

AFFIRMED.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).