COLONY ASSOCIATES, A VIRGINIA LIMITED PARTNERSHIP, BY ITS GENERAL PARTNERS, NORMAN V. WATSON, KAREN G. WATSON, G. COPE STEWART, III, ELIZABETH B. STEWART, THOMAS D. WEBB, III, CAROL B. WEBB, GLADE M. KNIGHT, KATHLEEN KNIGHT, AND HERITAGE ASSOCIATES, INC., A VIRGINIA CORPORATION, D/B/A COLONY APARTMENTS, AND QUADEL MANAGEMENT CORPORATION, A MARYLAND CORPORATION, D/B/A COLONY APARTMENTS v. FRED L. CLAPP & CO., A NORTH CAROLINA CORPORATION

No. 8218SC191

(Filed 15 February 1983)

1. **Principal and Agent § 4— proof of agency sufficient**

In an action to recover a deposit made on an unsuccessful loan commitment application, the trial judge erred in entering judgment notwithstanding the verdict for defendant since plaintiffs presented enough evidence of an agency relationship between them and defendant to withstand a directed verdict motion.

2. **Principal and Agent § 5— agent responsible for acts of subagent**

In an action to recover a deposit made on an unsuccessful loan commitment application, defendant agent was liable to plaintiff principals for the acts of its subagent where the defendant hired the subagent to carry out plaintiffs' request and where the facts showed that the defendant needed the subagent to obtain the refinancing and acted within the scope of its agency in employing the subagent. Although there was no specific permission from the plaintiffs to the defendant agent to employ a subagent, such consent by the principals could be implied "from the nature of the agency, the work to be done, and the particular circumstances."

3. **Contracts § 28.2— jury instructions concerning damages—error**

In an action to recover a deposit made on an unsuccessful loan commitment application, the trial judge erred in its instructions on damages where after stating that plaintiff should recover the amount of the deposit if the jury found that an agency existed, the trial court further stated that "if you fail to so find or if you have a doubt concerning those things which the plaintiffs

Colony Associates v. Fred L. Clapp & Co.

must prove . . . it would be your duty to answer the third issue in the amount which properly reflects your findings." The instruction allowed the jury to find damages in an amount other than the full deposit, and there was no relevant evidence to support the amount of the jury verdict.

**4. Rules of Civil Procedure § 50— j.n.o.v. improperly entered—remand for a new trial**

Where the appellate court found that j.n.o.v. was improperly entered by the trial court, it reversed and remanded the case for a new trial rather than reinstating the jury's verdict since an erroneous jury instruction on damages was given.

APPEAL by plaintiffs from *Seay, Judge.* Judgment entered 1 October 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 11 January 1983.

This is an action to recover a deposit made on an unsuccessful loan commitment application.

Plaintiff Colony, acting through its controlled corporation Quadel, issued a check for $11,000, payable to Global Mortgage Company on 21 July 1975. The draft was drawn on Quadel's escrow account.

Defendant Clapp had been contacted by Thomas B. Webb, III, Quadel's vice-president, about obtaining refinancing for the Colony Apartments complex in Chapel Hill. Clapp instructed Webb that the check was necessary as a good faith deposit on the permanent loan application with National Appraisal Associates, Inc., which was represented by John Davis d/b/a Global Mortgage Company.

Webb delivered the check to Clapp and its associate O. Larry Ward in July, 1975. They forwarded it and an executed loan application to Davis of Global. The check was paid upon presentment.

Global and Clapp agreed in July, 1975 to work on a "fifty-fifty net split fee basis on any package" which Clapp originated. The fee splitting arrangement applied to the loan in this case.

After a number of inquiries by Ward to Davis about the status of the loan, Davis wrote Ward on 14 October 1975 that the plaintiffs should seek refund of their $11,000 deposit from National Appraisal. Ward answered this letter on the following day

with a request that Global return the deposit. Ward's 15 October 1975 letter to Davis provided:

> Your letter to me dated June 30, 1975, which enclosed the application, requested that we make the good faith deposit payable to Global Mortgage Company and not payable to National Appraisal Association. You told us the reason for this was so that if anything went wrong, you could refund the deposit quickly. Well, everything has gone wrong and you should refund the good faith deposit because we had "good faith" in Mr. John Davis.
>
> As I told you on the phone this morning, as agent for Quadel and by writing to you October 1, 1975, we complied with Paragraph 4.1 of the application.

The plaintiffs received a copy of the 15 October 1975 letter.

Plaintiffs moved before trial to amend their complaint. They sought to allege as an alternative ground of recovery that the defendant Clapp was engaged in a joint venture with Davis d/b/a Global Mortgage Company. The motion was denied on 1 December 1976. The same motion was denied at the close of plaintiff's evidence at trial.

The defendant's motion for a directed verdict was denied at the close of all the evidence. The trial judge had reserved a ruling on the same motion when defendant made it at the close of the plaintiff's evidence.

The jury found for the plaintiffs on the three issues that were submitted to them. They decided that Clapp acted as Quadel's agent in obtaining the loan commitment and, as a result, Clapp owed Quadel $5,500 plus interest.

Following the jury verdict the trial judge allowed the defendant's directed verdict motion and entered a judgment notwithstanding the verdict for the defendant, pursuant to G.S. 1A-1, Rule 50. The plaintiffs then appealed to this Court.

*Newsom, Graham, Hedrick, Murray, Bryson, Kennon & Faison, by Josiah S. Murray, III and Joel M. Craig, for plaintiff-appellants.*

*Dees, Johnson, Tart, Giles & Tedder, by Charles M. Tate and Julius Dees, Jr., for defendant-appellee.*

ARNOLD, Judge.

We determine that defendant's motion for directed verdict was improperly granted and that judgment notwithstanding the verdict [hereinafter j.n.o.v.] was improper.

G.S. 1A-1, Rule 50(b)(1) allows the grant of a j.n.o.v. in favor of a party who has previously moved for a directed verdict. *Graves v. Walston*, 302 N.C. 332, 275 S.E. 2d 485 (1981). The defendant twice moved for a directed verdict at trial, including at the close of all the evidence. Thus, he met this requirement.

The standard to be used in deciding if a directed verdict was properly granted in a case like the one *sub judice* has been stated by our Supreme Court as follows: "On a motion by a defendant for a directed verdict in a jury case, the court must consider all the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff." *Kelly v. Harvester Co.*, 278 N.C. 153, 158, 179 S.E. 2d 396, 398 (1971).

The same factors are considered in determining if a j.n.o.v. should be granted as in the directed verdict decision. *N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). *See* Sizemore, General Scope and Philosophy of the New Rules, 5 Wake Forest L. Rev. 1, 41 (1969); W. Shuford, N.C. Civil Practice and Procedure § 50-8 (2d ed. 1981).

Plaintiffs argue that they presented enough evidence of an agency relationship between them and defendant to withstand a directed verdict motion and a j.n.o.v. If an agency relationship is established, plaintiffs contend, the defendant would be liable for all of the $11,000 good faith deposit because Global did not act properly in its role as subagent. An agent may be liable for acts of a subagent.

Two essentials are present in a principal-agent relationship: "(1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." *Vaughn v. Dept. of Human Resources*, 37 N.C. App. 86, 91, 245 S.E. 2d 892, 895 (1978). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his

control, and consent by the other so to act." Restatement (Second) of Agency § 1(1) (1957).

An agency can be proved "generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy. . . ." *Smith v. Kappas*, 218 N.C. 758, 765, 12 S.E. 2d 693, 698, *modified on other grounds*, 219 N.C. 850, 15 S.E. 2d 375 (1941).

[1] The evidence of an agency in this case, when considered in the light most favorable to the plaintiff, is not so insufficient as to justify entry of a j.n.o.v. for the defendant and grant of its directed verdict motion. It cannot be said as a matter of law that a jury could not find for the plaintiffs.

The record shows six instances on which the jury could have based its finding of an agency. First, plaintiffs contacted the defendant to begin the process of obtaining the loan refinancing. Second, Ward made changes in the loan application agreement with Webb's approval. Third, Ward instructed Webb to make the deposit check payable to Global. Webb followed these instructions and delivered the check to Ward, who forwarded it to Global.

Fourth, Ward described himself as Quadel's agent in the 15 October 1975 letter requesting return of the deposit. Although the labeling of this relationship by Ward does not determine if an agency existed, *see Lindsey v. Leonard*, 235 N.C. 100, 103, 68 S.E. 2d 852, 855 (1952), it is one factor to be considered.

Fifth, Ward asked National Appraisal on 18 November 1975 to direct all future contacts about the matter to his attention, "so that I can be kept up-to-date until Mr. Webb has received his check and complete file." Finally, there was no direct contact between the plaintiffs and Global or National Appraisal before Ward's demand on Smith for a refund proved futile. Before that point, the chain of contact was Colony to Clapp to Global to National Appraisal.

[2] After finding evidence that an agency relationship existed between the plaintiffs and the defendants, we must now decide if the defendant is responsible to the plaintiffs for the acts of Global. Is the defendant agent liable to the plaintiff principals for the acts of its subagent?

The Restatement (Second) of Agency § 5(1) (1957) defines a subagent as "a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible." Global fits this definition although the defendants did not explicitly agree to be liable for them. However, such liability can be implied.

"Unless otherwise agreed, an agent is responsible to the principal for the conduct of a . . . subagent with reference to the principal's affairs entrusted to the subagent . . . ." *Id.* at § 406. Comment "b" to this section adds "Thus the agent is subject to liability to the principal for harm to the principal's property or business caused by the subagent's negligence or other wrong to the principal's interests."

Although there was no specific permission from the plaintiffs to the defendant agent to employ a subagent, such consent by the principal can be implied "from the nature of the agency, the work to be done, and the particular circumstances." 3 C.J.S. *Agency* § 261 (1973). The facts here show that the defendant needed Global to obtain the refinancing and acted within the scope of its agency in employing it.

Evidence supports a finding that the defendant agent is liable for the deposit that went to the subagent Global in this case.

> [I]f the agent, having undertaken to transact the business of the principal, employs a subagent on his own account to assist him in what he has undertaken to do, *even though he does so with the consent of the principal* he does so at his own risk, and there is no privity between such subagent and the principal. The subagent is, therefore, the agent of the agent only.

1 F. Mechem, A Treatise on the Law of Agency § 333 (2d ed. 1914) (emphasis added).

The facts here show that the defendant hired Global to carry out the plaintiffs' request. This is to be distinguished from the case where the subagent becomes the agent of the principal because the principal directed, either expressly or impliedly, the agent to hire the subagent. *See* W. Seavey, Handbook on the Law

of Agency § 156B (1964); P. Mechem, Outlines on the Law of Agency §§ 79-80 (4th ed. 1952); R. Lee, N.C. Law of Agency and Partnership § 47 (6th ed. 1977).

[3] Having found that the defendant may be held accountable for the acts of the subagent, we must then determine the amount of its liability. Plaintiffs argue that they should recover the entire $11,000 deposit and attack the jury verdict of $5,500 plus interest as the result of an erroneous instruction by the trial judge. In its instructions on damages, the trial judge in part stated:

> [I]f you find by the greater weight of the evidence that the plaintiffs have sustained an amount of damages under the rules which I have explained to you; that is, that they are entitled to recover the return of the funds advanced pursuant to the contract . . . it would be your duty to answer the third issue in that amount; specifically, $11,000.00.

Plaintiffs contend that this quoted portion of the instruction was correct but they attack the statement that followed as erroneous:

> Now, members of the jury, if you fail to so find or if you have a doubt concerning those things which the plaintiffs must prove or if you are unable to tell where the truth lies, it would be your duty to answer the third issue in the amount which properly reflects your findings.

This instruction is attacked by the plaintiffs as encouraging a compromise verdict by the jury. Defendants argue that even if there were error, it was beneficial to the plaintiffs because it permitted the jury to consider the issue even if plaintiffs did not prove their case.

We find that the portion of the instruction that allowed the jury to find damages in an amount other than $11,000 was reversible error. There is no relevant evidence to support the amount of the jury verdict here.

Because the defendant is the plaintiffs' agent it is either liable for the entire amount of the check or none of it. Evidence of the fifty-fifty fee-splitting arrangement between the defendant and Global is relevant only between those two parties. It has no bearing on defendant's liability to the plaintiffs.

As a result, the trial judge should have stopped his instruction to the jury after he stated that plaintiff should recover $11,000 if the jury found that an agency existed. This case is similar to *Terrell v. Chevrolet Co.*, 11 N.C. App. 310, 181 S.E. 2d 124 (1971), where the court commented that peremptory instructions should be given in certain cases. "When all the evidence offered suffices, if true, to establish the controverted fact, the court may give a peremptory instruction—that is, if the jury find the facts to be as all the evidence tends to show, it will answer the inquiry in an indicated manner." 11 N.C. App. at 314, 181 S.E. 2d at 127 *quoting Chisholm v. Hall*, 255 N.C. 374, 121 S.E. 2d 726 (1961). Once the agency relationship was established, there was no conflict in the evidence as to the amount of damages. *See* 12 Strong's N.C. Index 3d Trial § 31 (1978).

Plaintiffs raise as an alternative ground of recovery that the defendant was engaged in a joint venture with Global and as a result they should recover from the defendant because Global did not return the $11,000 check. Because of our resolution of the case, we find it unnecessary to discuss this contention.

[4] Because we find that the j.n.o.v. was improperly entered, we reverse and remand for a new trial. Although there is authority in North Carolina that would require us to reinstate the jury's verdict, *e.g., Musgrave v. Savings and Loan*, 8 N.C. App. 385, 174 S.E. 2d 820 (1970), we find those cases to be distinguishable on the facts.

In the case *sub judice*, an erroneous jury instruction was given. This is unlike *Musgrave* and other cases that would reinstate the jury verdict. The grant of j.n.o.v. was reversed in those cases only because there was sufficient evidence to justify the jury verdict.

There is substantial authority for our grant of a new trial, even though neither party made a motion for it. A leading treatise on civil procedure states: "Where no motion for a new trial was made, the appellate court, reversing a judgment n.o.v., may order entry of judgment on the verdict, *order a new trial*, or remand for consideration in light of the court of appeals' disposition of the judgment n.o.v." 5A Moore's Federal Practice ¶ 50.14 (2d ed. 1982) (emphasis added). *See also Kendrick v. Ill. Cent. Gulf*

James v. Board of Education

*R.R. Co.*, 669 F. 2d 341 (5th Cir. 1982); *Derr v. Safeway Stores, Inc.*, 404 F. 2d 634 (10th Cir. 1968).

Reversed and remanded for a new trial.

Judges HILL and WHICHARD concur.