RODWELL v. CHAMBLEE

[131 N.C. App. 473 (1998)]

————

ROY O. RODWELL AND COWEE CORPORATION, PLAINTIFFS V.
PAUL C. CHAMBLEE, DEFENDANT

No. COA97-719

(Filed 1 December 1998)

**1. Agency— corporation as agent**

A corporation may act as an agent, and a stockholder in that corporation may act as the principal.

**2. Agency— act of agent as act of principal**

If an agency agreement exists, even informally, then the act of an agent within the scope of its authority is in legal effect the act of the principal, and the latter is entitled to all the advantages flowing therefrom.

**3. Agency— corporation's payment of partnership debt— agent of partner—genuine issue of material fact**

A genuine issue of material fact existed as to whether a corporation wholly owned by plaintiff partner-guarantor made payments on a partnership obligation to a bank as an agent of plaintiff so as to render defendant partner-guarantor liable for indemnification of plaintiff under the terms of the partnership agreement.

Judge TIMMONS-GOODSON dissenting.

Appeal by plaintiffs from order dated 19 March 1997 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 17 February 1998.

*Sandman & Strickland, P.A., by Nelson G. Harris, for plaintiff appellants.*

*Bode, Call & Stroupe, L.L.P., by Odes L. Stroupe, Jr. and John V. Hunter, III, for defendant appellee.*

GREENE, Judge.

Roy O. Rodwell (Rodwell) and Cowee Corporation (Cowee) (collectively, Plaintiffs) appeal from the trial court's grant of summary judgment dismissing Plaintiffs' claims against Paul C. Chamblee (Defendant).

On or about 25 September 1995, Plaintiffs filed a complaint against Defendant alleging that Creedmoor Associates Limited Partnership (Creedmoor) had borrowed $500,000.00 from First Union National Bank (First Union), and that Rodwell, Defendant, and the remaining Creedmoor partners had "each jointly and severally guaranteed payment to First Union of [Creedmoor's] obligations [to First Union] under the Note, by each executing a separate Unconditional Guaranty . . . ." Plaintiffs alleged that the Creedmoor partnership agreement had been amended (Creedmoor First Amendment) such that any partner who paid in excess of his partnership percentage towards Creedmoor's obligation to First Union would be indemnified by the remaining partners. The Creedmoor First Amendment provided, in relevant part:

As between themselves, the Partners agree that with respect to the [First Union] Loan, each Partner's liability for repayment of principal and interest on said loan shall be limited to an amount determined by multiplying the amount of unpaid principal and interest on the [First Union] Loan by the respective partnership interest percentage of each Partner. In the event that any Partner is required to pay and pays to First Union with respect to the [First Union] Loan an amount in excess of such Partner's share as determined above ("Excess Payment") the remaining Partners agree to indemnify the Partner making such Excess Payment . . . .

. . . .

In the event that any Partner . . . is required to pay and makes any Excess Payment, the remaining Partners . . . agree to indemnify such Partner an amount equal to the full Excess Payment, provided, however, the amount of indemnification from any Partner required to indemnify against such Excess Payment shall be limited to an amount determined by multiplying the Excess Payment times the respective percentage interest in the Partnership of each remaining Partner determined without taking into consideration the interest of the Partner to be indemnified . . . .[1]

Plaintiffs further alleged:

15. [Creedmoor] did not carry out its obligations [to First Union] under the Note . . . and failed entirely to perform its obligations thereunder. Accordingly, it became necessary for the Guarantors, jointly and severally, to perform the obligations under the Note . . . .

16. During the period from March 26, 1991 through May 8, 1993, Cowee, [a corporation wholly owned by Rodwell and "used by Rodwell to fund his personal business obligations,"] on behalf of [Rodwell], made various payments to First Union with respect to [Creedmoor's] and the Guarantors' obligations under the Note . . .; said payments totaling $419,534.57, and said payments fully satisfying [Creedmoor's] obligations under the Note . . . .

. . . .

22. Despite proper demand, Defendant has failed and refused to pay any portion of the sum owing to Rodwell.

In Counts One through Three of Plaintiffs' complaint, Rodwell seeks relief under an agency theory, under an unjust enrichment theory, and pursuant to N.C. Gen. Stat. § 26-5. In Count Four of Plaintiffs' complaint, Cowee seeks relief under the doctrine of *quantum meruit*. Attached to the complaint are copies of Creedmoor's obligation to First Union and the unconditional guaranty signed by Defendant as a joint and several guarantor of that obligation.

On or about 12 December 1995, Defendant admitted in his answer that Creedmoor "did not carry out its obligations under the Note." Defendant "d[id] not deny that [Cowee] apparently made voluntary

---

1. We note that the Creedmoor First Amendment has a slightly different provision for one of the Creedmoor partners who is not a party to this suit.

payments on the loan to First Union." Defendant further admitted that the Creedmoor First Amendment "provides in paragraph 2.3 that as between themselves, partners must indemnify any other partner who makes excess loan payments to [First Union] for the First Union loan," and that Defendant's "percentage interest liability to a partner is 20% of such excess amounts paid by a partner to [First Union] in satisfaction of the First Union loan." In addition, Defendant admitted that he had "refused to [indemnify Rodwell for] any portion of the sum paid to First Union by [Cowee]." Defendant contended:

[T]he payments which [Rodwell] seeks to recover in this proceeding were not made by him, but were made by [Cowee], which is not a partner or other entity which Defendant agreed to guaranty payment on behalf of and therefore any payments made by [Cowee] whether on behalf of [Rodwell] or otherwise create no liability in Defendant pursuant to any of the agreements alleged in the Complaint. [Cowee] was a "mere volunteer" with respect to said payments to First Union and therefore neither [Rodwell] nor [Cowee] is entitled to recover for any such payments made by [Cowee].

. . . [I]n the event that Defendant is held to be liable to Plaintiffs for any of the alleged sums owing, which Defendant denies, then and in that event, Plaintiffs' claims against [Defendant] are time barred by the applicable statute of limitations and/or repose, which Defendant hereby asserts as an affirmative defense as a total bar to this litigation.

On 28 February 1996, Plaintiffs filed responses to Defendant's admission requests. Plaintiffs admitted therein that Defendant had no "contractual agreement or written contract with [Cowee] wherein [he] has any liability or obligation to [Cowee]," and that Cowee was not a party to the Creedmoor First Amendment. Plaintiffs further admitted that Cowee "had no contractual liability or indebtedness to First Union which required it to make payments [on the note] to First Union," and that Cowee did not make payments on the obligation under any "mistaken set of facts." Plaintiffs also admitted that Rodwell "utilized [Cowee] for the payment of his obligations for convenience." Plaintiffs denied that Rodwell had utilized Cowee for the payment of his obligations for tax reasons. Plaintiffs "admitted that [Cowee's] payments to First Union were made on behalf of [Rodwell], and were made under [Rodwell's] direction and control," but denied Defendant's contention that Cowee was under "no obligation to anyone" to make the payments to First Union.

RODWELL v. CHAMBLEE

[131 N.C. App. 473 (1998)]

On 21 February 1997, Defendant moved for summary judgment "on the grounds that based upon the pleadings and responses to discovery, there is no genuine issue of material fact and that [Defendant] is entitled to judgment as a matter of law." In response to Defendant's motion for summary judgment, Plaintiffs filed the "Affidavit of Roy O. Rodwell" on or about 14 March 1997. In his affidavit, Rodwell swore the following additional facts:

> 5. At all times relevant to this matter, Cowee was acting as the agent and alter ego of Rodwell, completely at his direction and under his control.
>
> . . . .
>
> 35. Rodwell is the sole owner of Cowee, had sole signature authority with respect to Cowee's checking account, and executed each check by which he made payment to First Union.
>
> 36. With respect to all payments made, by Cowee checks to First Union, Rodwell deposited his personal funds in Cowee's account, and those funds were thereafter used to make the payments.

Attached to Rodwell's affidavit, among other items, were copies of several checks made out to First Union which had been drawn on Cowee's account and signed by Rodwell. "Creedmoor Associates" was handwritten on the memorandum line of most of these checks.

On or about 19 March 1997, the trial court granted Defendant's motion for summary judgment based on its finding that "there are no genuine issues of material fact and that Defendant is entitled to summary judgment upon all of Plaintiffs' claims as a matter of law."

Plaintiffs appeal summary judgment for Defendant, contending before this Court only that Rodwell is entitled to indemnification (pursuant to the terms of the Creedmoor First Amendment) under an agency theory. The remaining theories alleged in Plaintiffs' complaint (*i.e.*, unjust enrichment, *quantum meruit*, and N.C. Gen. Stat. § 26-5) are deemed abandoned by Plaintiffs' decision not to pursue them on appeal. *See* N.C.R. App. P. 28(b)(5); *State v. Brothers*, 33 N.C. App. 233, 234-35, 234 S.E.2d 652, 652-53, *disc. review denied*, 293 N.C. 160, 236 S.E.2d 704 (1977). Accordingly, we do not address whether the trial court properly granted summary judgment for Defendant under those theories.

The issue is whether there is evidence that Cowee acted as Rodwell's agent in making payments on Creedmoor's obligation to First Union.

[1] An agency relationship is created by agreement of the principal and the agent. 3 Am. Jur. 2d *Agency* § 17 (1986) (noting that there must be a "meeting of the minds" between the principal and the agent). A corporation may act as an agent, Russell M. Robinson, II, *North Carolina Corporation Law* § 3-5(d) (5th ed. 1995); 3 Am. Jur. 2d *Agency* § 13 (1986); *see Pick v. Hotel Company*, 197 N.C. 110, 112, 147 S.E. 819, 820 (1929), and a stockholder in that corporation may act as the principal, *see* 18A Am. Jur. 2d *Corporations* § 779 (1985) (noting that a dominant stockholder may contract with his corporation provided that close scrutiny of the agreement reveals it to be "fair and for an adequate consideration").

[2] "An agency can be proved 'generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy.' " *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 599, 394 S.E.2d 643, 650 (1990) (quoting *Colony Associates v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 638, 300 S.E.2d 37, 39 (1983)), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991); *see also* 3 Am. Jur. 2d *Agency* § 2 (1986) (noting that "one of the prime elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent"). It is not essential that the principal and the agent enter into an actual contract; rather, the agency relationship may be informally created. 3 Am. Jur. 2d *Agency* § 18 (1986). If an agency agreement exists, even informally, then the act of an agent within the scope of its authority "is in legal effect the act of the principal, and the latter is entitled to all the advantages flowing therefrom." *Id.* at § 296.

[3] In this case, our review of the evidence reveals a genuine issue of material fact as to whether Cowee made payments on Creedmoor's obligation to First Union as the agent of Rodwell. *See Hinson v. United Financial Services*, 123 N.C. App. 469, 472, 473 S.E.2d 382, 385 (noting that summary judgment is improper where the evidence, viewed in the light most favorable to the non-moving party, reveals a genuine issue of material fact), *disc. review denied*, 344 N.C. 630, 477 S.E.2d 39 (1996). The evidence in the light most favorable to Plaintiffs reveals that Rodwell, the sole stockholder of Cowee, "utilized

**RODWELL v. CHAMBLEE**

[131 N.C. App. 473 (1998)]

[Cowee] for the payment of his obligations for convenience," and that Cowee made payments on Creedmoor's obligation to First Union "under [Rodwell's] direction and control" and "on behalf of Rodwell." If Cowee acted as Rodwell's agent in making payments on Creedmoor's obligation to First Union, these payments would, "in legal effect," be payments made by Rodwell,[2] and Rodwell would therefore be entitled to indemnity from Defendant under the terms of the Creedmoor First Amendment.

Accordingly, summary judgment entered against Rodwell is reversed; summary judgment against Cowee is affirmed.[3]

Reversed in part, affirmed in part and remanded.

Judge WALKER concurs.

Judge TIMMONS-GOODSON dissents.

Judge TIMMONS-GOODSON dissenting.

I do not agree that a genuine issue of material fact is presented in this case on the question of agency. I would affirm summary judgment for the defendant.

"The term 'agency' means a fiduciary relationship by which a party confides to another the management of some business to be transacted in the former's name or on his account, and by which such other assumes to do the business and render an account of it." 3 Am. Jur. 2d *Agency* § 1 (1986). "[O]ne of the prime elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." 3 Am. Jur. 2d *Agency* § 2 (1986).

---

2. We note Defendant's contention that Cowee made payments on the obligation as a "mere volunteer." Defendant is correct that the equitable doctrine of subrogation does not apply "in favor of a volunteer, who, being under no legal or moral obligation and having no right or interest of his own to protect, discharges the debt of another." *Trustees of Garden of Prayer Baptist Church v. Geraldco Builders*, 78 N.C. App. 108, 114, 336 S.E.2d 694, 698 (1985). If Plaintiffs prove that Cowee was Rodwell's agent and made the payments pursuant to that agency agreement, however, then Cowee would have had a legal obligation to make the payments and would not have been a "mere volunteer." In any event, one who makes a payment "at the instance, solicitation, or request of the person whose liability he discharges" is *not* a "mere volunteer." 73 Am. Jur. 2d *Subrogation* § 24 (1974).

3. In his brief before this Court, Defendant argues that Cowee's claims are partially barred by the statute of limitations. Cowee, however, has abandoned its only claim for relief (*i.e.*, *quantum meruit*) by failing to argue it before this Court. Defendant does not contend that Rodwell's claims are time-barred.

In the case at bar, plaintiffs allege that Cowee (a corporation) is the agent of Rodwell (an individual). However, this is not possible under these facts as a corporation is "an artificial being" with its existence and purpose determined by its charter, bylaws and articles of incorporation. 18 Am. Jur. 2d *Corporations* § 1 (1985). While plaintiffs allege that Cowee is "used by Rodwell to fund his personal business obligation," they fail to allege or prove that the stated purpose, as articulated in Cowee's charter, bylaws or articles of incorporation, was to be an agent of Rodwell.

It appears that for his own personal reasons, Rodwell chose to funnel the excess payments on the First Union Loan through the Cowee Corporation. The fact that Rodwell avers that Cowee was acting as his agent and alter ego in making the payments on the First Union Loan, or that Cowee is wholly owned by Rodwell is not enough to give rise to an agency relationship. Indeed, Rodwell has failed to come forth with any evidence that would permit such a determination.

I would affirm the entry of summary judgment for the defendant. In all other respects, I concur with the majority.