IRIS B MUNN, Administratrix of the Estate of DEMETRA C.B. MURPHY, Deceased, Plaintiff v. HAYMOUNT REHABILITATION & NURSING CENTER, INC. and CENTURY CARE OF FAYETTEVILLE, INC., Defendant

No. COA10-105

(Filed 21 December 2010)

### 1. Arbitration and Mediation— no valid arbitration agreement

The trial court did not err in determining that there was no valid arbitration agreement between the deceased or her estate and defendant. There was no actual or apparent authority for the deceased's mother to act as her agent in signing the arbitration agreement, N.C.G.S. § 90-21.13 was inapplicable, and defendant could not have reasonably relied on any representation that the deceased's mother was her agent. Defendant's public policy argument was also rejected.

### 2. Estoppel— affirmative defense—not plead at trial level

Defendant's argument that plaintiff was estopped from denying the validity of a contract executed on behalf of the deceased was rejected where defendant did not plead the affirmative defense of estoppel at the trial level.

### 3. Arbitration and Mediation— ratification of arbitration agreement—not plead at trial level

Defendant's argument that the deceased ratified an arbitration agreement executed by her mother on her behalf was rejected where defendant did not make any allegation of ratification in its pleadings to the trial court.

### 4. Arbitration and Mediation— unconscionable agreement— issue not addressed

Plaintiff's argument that an arbitration agreement was unconscionable was not addressed as the Court of Appeals determined that plaintiff was not bound by the agreement.

Appeal by defendants from order entered on or about 4 August 2009 by Judge Shannon R. Joseph in Superior Court, Cumberland County. Heard in the Court of Appeals 30 August 2010.

*Ferguson, Stein, Chambers, Gresham & Sumter, P.A., by Adam Stein and Anne Duvoisin, for plaintiff-appellee.*

*Yates, McLamb & Weyher, L.L.P., by Barry S. Cobb, for defendant-appellants.*

STROUD, Judge.

Defendants appeal a trial court order denying their amended motion to compel arbitration and granting plaintiff's motion to dismiss defendants' claim for arbitration. As we conclude that there is no valid arbitration agreement between the parties, we affirm.

## I. Background

On 20 November 2008, plaintiff filed a complaint against defendants for violation of statutory duties and wrongful death, negligence and wrongful death, and corporate negligence arising out of the medical treatment of Ms. Demetra Murphy at defendants' nursing home facility, Haymount Rehabilitation & Nursing Center, Inc. On 27 January 2009, defendants filed a motion to dismiss, a motion to stay and dismiss, and an answer to plaintiff's complaint. On or about 22 July 2009, defendants filed an amended motion to compel arbitration.

On or about 4 August 2009, the trial court, *inter alia*, denied defendants' amended motion to compel arbitration and granted plaintiff's motion to dismiss defendants' claim for arbitration.[1]

The trial court made the following uncontested findings of fact:

2. Plaintiff brings this action in her representative capacity as Administratrix of the Estate of Demetra Murphy for damages stemming from the alleged wrongful death and negligent care by Defendants of Plaintiff's adult daughter, Demetra Murphy ("Murphy"). Plaintiff is not decedent Murphy's heir and will not receive proceeds, if any, from this action. At the time of her death, decedent Murphy was married to Calvin Murphy and had a daughter.

. . . .

4. Decedent Murphy arrived at the nursing home after having been hospitalized for a lengthy period. She had not recovered sufficiently to be discharged to her family's home. When decedent

---

1. The record does not contain a motion from plaintiff to dismiss defendants' claim for arbitration, though one was apparently filed.

Murphy was admitted to the nursing home, she was not responsive: she was not able to speak or communicate with anyone. The nursing home did not have any previous experience with decedent Murphy. Decedent Murphy's husband and Plaintiff, along with other family members, went to the nursing home on the day of decedent Murphy's admission to [the] facility. While the unconscious Murphy was moved to a room in the facility, Plaintiff and Mr. Murphy participated in the admission process for Murphy's admission to the facility, including completing paperwork.

5. Mr. Murphy testified that he did not pay attention to the admission process, as he was bothered by the state of the facility. Plaintiff likewise explained that she was troubled by the state of the facility and did not focus on the admission process, but was thinking to herself that she would make efforts to move her daughter to another facility. In response to a query during the admission process about who would sign all the paperwork, Mr. Murphy asked that Plaintiff be the person to make decisions about decedent Murphy's care because his work schedule made him difficult to locate and contact.

6. Defendants seek to compel arbitration based on a paragraph entitled "Mandatory Arbitration" contained in the "Admission Agreement" signed on 17 June 2004 by Plaintiff when Plaintiff's adult daughter (decedent Murphy) was admitted to a nursing home operated by Defendants. The Admission Agreement recites that it is "by and between Century Care of Fayetteville and Demetra Murphy (Resident) or Iris Munn (Responsible Party)."

7. The arbitration section in the Admission Agreement requires all matters "[e]xcept for Facility's effort to collect monies due from Resident and Facility's option to discharge Resident for such failure" to be arbitrated in accordance with "the Alternative Dispute Resolution Service Rules of Procedure for Arbitration of the American Health Lawyers Association . . . , and not be a lawsuit or resort to court process . . . ." The arbitration section provides that its terms "inure to the benefit of and bind the parties, their successors and assigns, including the agents, employees and servants of the Facility, and all persons whose claims are derived through or on behalf of the Resident."

8. In the only full-sentence text of the six-page Admission Agreement that is underlined, the arbitration section specifies that agreeing to its terms means giving up the right to a jury trial:

MUNN v. HAYMOUNT REHAB. & NURSING CTR.

[208 N.C. App. 632 (2010)]

The parties understand and agree that by entering this Agreement they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury.

. . . .

10. Plaintiff, signing the agreement on the signature line for the "Responsible Party," did not ask any questions about the arbitration provision in the Admission Agreement before signing it.

. . . .

12. Decedent Murphy did not sign the Admission Agreement that contained the arbitration provision.

. . . .

15. When Plaintiff signed the Admission Agreement as the "Responsible Party," she had no power of attorney and was not guardian of her daughter, decedent Murphy.

. . . .

17. Plaintiff was not authorized by her status as the adult decedent's mother to agree to the arbitration provision.

. . . .

27. The facility did not seek, request, or require proof of legal authority for one to act on behalf of a patient during the admission process. In particular, . . . the facility employee . . . confirmed at her deposition that she generally did not require power of attorney or guardianship documentation to establish legal authority to sign admission documents when the patient was not able to act on his or [sic] own behalf. Rather, generally in conducting the admission process, the facility employee would go through the process with either the next-of-kin to the patient or whoever had acted on behalf of the patient at the hospital, even if not kin to the patient.

(Emphasis in original.) (Footnote omitted.) Based on these and other findings, the trial court determined that there was not a valid arbitration agreement between the estate of Ms. Murphy and defendants. Defendants appeal.

## II. Interlocutory Appeal

We first note that "[a]n order denying defendants' motion to compel arbitration is not a final judgment and is interlocutory. However, an order denying arbitration is immediately appealable because it involves a substantial right, the right to arbitrate claims, which might be lost if appeal is delayed." *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 418-19, 637 S.E.2d 551, 554 (2006) (citations and quotation marks omitted).

## III. Standard of Review

Whether a dispute is subject to arbitration is an issue for judicial determination. Our review of the trial court's determination is de novo. Pursuant to this standard of review, the trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary. Accordingly, upon appellate review, we must determine whether there is evidence in the record supporting the trial court's findings of fact and if so, whether these findings of fact in turn support the conclusion that there was no agreement to arbitrate.

*Harbour Point v. DJF Enters.*, —— N.C. App. ——, ——, 688 S.E.2d 47, 50 (citations, quotation marks, and brackets omitted), *disc. review denied*, —— N.C. ——, 698 S.E.2d 397, *appeal dismissed and cert. denied*, —— N.C. App. ——, 697 S.E.2d 439 (2010).

## IV. Arbitration

**[1]** Defendants argue that the trial court erred in determining there was no valid arbitration agreement. The admission document signed by Ms. Munn included provisions regarding various matters in addition to the disputed arbitration provision; the vast majority of the provisions involve financial responsibility and payment for the services provided at or by the nursing home. The admission document also contained provisions regarding general "housekeeping" matters such as visiting hours and laundry options. Ms. Munn's personal financial responsibility for payment for Ms. Murphy's care, as the "responsible party," is not an issue in this case, and we note that Ms. Munn did not need any legal authority from Ms. Murphy or on her behalf to agree to be personally liable for payment of Ms. Murphy's care. Furthermore, we note that the admission document does not specifically address consent for health care for Ms. Murphy, although Ms. Munn's author-

ity to consent to health care for Ms. Murphy is not an issue in this case either. However, Ms. Munn would be required to have some form of legal authority to enter into an arbitration agreement on behalf of Ms. Murphy or her estate.

The first question which we must consider is whether there was a valid arbitration agreement between Ms. Murphy or her estate and defendants.

> A two-part analysis must be employed by the court when determining whether a dispute is subject to arbitration: (1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement.

> The law of contracts governs the issue of whether there exists an agreement to arbitrate. Accordingly, the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes.

*Id.* at ——, 688 S.E.2d at 50 (citations and quotation marks omitted).

A. Agency

Defendants first contend that "the trial court improperly determined that Iris Munn was not the actual or apparent agent" of Ms. Murphy. (Original in all caps.)

> A principal is liable upon a contract duly made by its agent with a third person in three instances: when the agent acts within the scope of his or her actual authority; when a contract, although unauthorized, has been ratified; or when the agent acts within the scope of his or her apparent authority, unless the third person has notice that the agent is exceeding actual authority.

*First Union Nat'l Bank v. Brown*, 166 N.C. App. 519, 527, 603 S.E.2d 808, 815 (2004) (citation omitted).

> Two essentials are present in a principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent. Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

> An agency can be proved generally, by any fact or circumstance with which the alleged principal can be connected and

having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy[.]

*Colony Assocs. v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 637-38, 300 S.E.2d 37, 39 (1983) (citations and quotation marks omitted).

1. Actual Authority

Defendants argue that Ms. Munn was Ms. Murphy's actual agent. "[I]n establishing the existence of an actual agency relationship, the evidence must show that a principal *actually consents* to an agent acting on its behalf." *Phillips v. Rest. Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 217, 552 S.E.2d 686, 695 (2001) (emphasis added), *disc. review denied*, 355 N.C. 214, 560 S.E.2d 132 (2002). "Actual authority may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question." *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 830, 534 S.E.2d 653, 655 (2000). Defendants direct our attention to specific facts as evidence that Ms. Munn was Ms. Murphy's actual agent:

> In the case at bar, the conduct of the principal Ms. Murphy both before and after her comatose state and of her agent Ms. Munn indicate an agency relationship.

> In December of 2003, Ms. Murphy voluntarily committed herself for psychiatric care, and at the time of that commitment she conveyed to healthcare providers that her mother was her next of kin and primary contact: In the Complaint, Plaintiff also alleges that Ms. Murphy was alert for communicating with her caregivers and family for some period prior to her death, . . . and yet she never asked to change any of the decisions made by her mother regarding her healthcare up to that point. These facts establish Ms. Murphy's intention to allow her mother to make healthcare decisions for her, including contracting for healthcare services.

Despite the defendants' contentions as to the facts, the trial court's factual findings are fully supported by the evidence. The fact that Ms. Murphy identified "her mother [as] her next of kin and primary contact" and that in periods when she could communicate, Ms. Murphy "never asked to change any of the decisions made by her mother" does not demonstrate that Ms. Munn had actual authority as Ms. Murphy's agent. Neither Ms. Murphy's "words and actions" nor the "facts and circumstances[,]" *Harris* at 830, 534 S.E.2d at 655, establish that Ms. Murphy "actually consent[ed] to . . . Ms. Munn acting on [her] behalf." *Phillips* at 217, 552 S.E.2d at 695. We conclude

that the trial court did not err in concluding that there was not an actual agency relationship between Ms. Munn and Ms. Murphy.

2. Apparent Authority

Defendants also contend that Ms. Munn was Ms. Murphy's apparent agent.

> Apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses. Under the doctrine of apparent authority, a principal's liability in any particular case must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent.

*Heath v. Craighill, Rendleman, Ingle & Blythe,* 97 N.C. App. 236, 242, 388 S.E.2d 178, 182 (citations and quotation marks omitted), *disc. review denied,* 327 N.C. 428, 395 S.E.2d 678 (1990). "The scope of an agent's apparent authority is determined not by the agent's own representations but by the manifestations of authority which the principal accords to him." *McGarity v. Craighill, Rendleman, Ingle & Blythe, P.A.,* 83 N.C. App. 106, 109, 349 S.E.2d 311, 313 (1986), *disc. review denied,* 319 N.C. 105, 353 S.E.2d 112 (1987).

Defendants first direct our attention to *Raper v. Oliver House, LLC,* 180 N.C. App. 414, 637 S.E.2d 551 (2006). However, in *Raper* there was no issue that the signor of the arbitration agreement was the decedent's agent as "[t]he trial court entered an uncontested finding of fact that plaintiff held decedent's power of attorney." *Id.* at 422, 637 S.E.2d at 556. This Court went on to state that

> [i]t is well established that a contract is enforceable against a party who signs the contract. Plaintiff signed the Agreement as the Responsible Party and as decedent's attorney-in-fact. The Agreement and its arbitration clause is enforceable and provides an arbitral forum to resolve all claims or disputes arising under the parties' contract.

*Id.* We conclude that *Raper* is inapposite to the current case as agency was not an issue in that case. See *id.*

Turning to the facts which defendants argue show apparent authority:

> Ms. Munn repeatedly held herself out over the course of her daughter's admission as the party responsible for signing off on forms, including surgical consent forms, for her daughter's care.

. . . .

Ms. Murphy was not in a condition where she could sign for her-self, and Mr. Murphy deferred to Ms. Munn as having authority to sign the paperwork. Ms. Munn signed her own name and indi-cated she was Ms. Murphy's authorized representative, and there is no credible evidence in the record that she qualified or limited her authority in any way. The staff at Century Care would call Ms. Munn for authority to give treatment to Ms. Murphy and Ms. Munn would authorize treatment to be given to her daughter, including surgical authorizations at the local hospital. . . . Further, Century Care had no prior relationship with Ms. Murphy that would put it on notice if Ms. Munn lacked or exceeded the author-ity given by her daughter.

All of the evidence indicated that Ms. Munn was consulted about and made decisions regarding her daughter's medical treatment, but it does not indicate that Ms. Munn was authorized as or acted as if she were authorized to be Ms. Murphy's general agent in matters such as arbitration agreements. Defendants also argue that "*Mr.* Murphy deferred to Ms. Munn as having authority to sign the paperwork[;]" defendants do not argue that Ms. Murphy made any manifestation of Ms. Munn's authority at the time of the signing of the paperwork as at that time she was "not responsive" and unable "to speak or commu-nicate." (emphasis added.) We again note that "[t]he scope of an agent's apparent authority is determined not by the agent's own representations but by the manifestations of authority which the principal accords to h[er]." *McGarity* at 109, 349 S.E.2d at 313. Defendants have not demonstrated that the trial court's factual findings were not supported by the evidence nor that the trial court erred in its conclusion that Ms. Munn did not have apparent authority to enter into an arbitration agreement on Ms. Murphy's behalf.

Defendants end their argument regarding apparent authority with case law regarding "providing medical care to incompetent patients[.]" However, consent for medical care for another person who is unable to consent is a completely different issue than being an agent who has the authority to enter into a contract such as an arbitration agreement. Ms. Munn's authority to consent to medical care for Ms. Murphy is not an issue in this case. We agree with the trial court's conclusion that Ms. Munn was not the apparent agent of Ms. Murphy.

### 3. N.C. Gen. Stat. § 90-21.13

Defendants also contend that N.C. Gen. Stat. § 90-21.13 gave Ms. Munn the authority to consent to an arbitration agreement on behalf of Ms. Murphy. Even assuming that plaintiff is incorrect in arguing that defendants did not properly preserve this issue for appeal, the portion of N.C. Gen. Stat. § 90-21.13(c) upon which defendants' argument relies did not become effective until 2007; Ms. Murphy died in 2005. *See* N.C. Gen. Stat. § 90-21.13 (2005), (2007). Furthermore, the 2005 version of N.C. Gen. Stat. § 90- 21.13 is inapplicable to arbitration agreements. The statute is entitled "[i]nformed consent to *health care treatment or procedure*" and the statutory language addresses consent for health care but does not mention authority to enter into contractual arrangements such as an arbitration agreement. *See* N.C. Gen. Stat. § 90-21.13 (2005) (emphasis added). Defendants have not presented any authority or argument that arbitration is a form of "health care treatment or procedure" or that arbitration is a necessary corollary to any "health care treatment or procedure." *Id.* The fact that an arbitration provision was included within an admission agreement which dealt almost entirely with financial responsibility for payment for "health care treatment or procedure[s]" in no way transforms the provisions of the agreement regarding arbitration into consent for "health care treatment or procedure[s]." *Id.*

### 4. Reliance

Defendants also argue that they reasonably relied on Ms. Munn's representations that she was Ms. Murphy's agent. However, the only "representation" defendants direct our attention to is Ms. Munn's signing of the documents. The fact that Ms. Munn signed documents for the admission and treatment of Ms. Murphy in no way indicates she was Ms. Murphy's agent, as it does not indicate any manifestation of authority by Ms. Murphy. As noted above, "[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Colony Assocs.* at 637-38, 300 S.E.2d at 39. Ms. Murphy never manifested any form of consent which indicated that Ms. Munn was acting as her agent. *See id.* We agree with the trial court that defendants could not have reasonably relied on any representation that Ms. Munn was Ms. Murphy's agent.

### 5. Other Defenses

We need not address defendants' next argument regarding other defenses plaintiff might raise as defendants concede that this argu-

ment is based upon "this Court find[ing] that Judge Joseph's conclusions about actual or apparent agency are not supported by competent evidence," and we have not so determined.

6. Public Policy

Defendants finally argue that "[h]olding that signature by a 'responsible party' is not legally binding in an admission agreement will force nursing homes to require legal guardianship or power of attorney signatures for each and every admission."[2] The fallacy in defendants' argument is its failure to recognize the various components of the admission document. The primary focus of the admission document was to secure payment for the services rendered to Ms. Murphy. Neither this Court nor the trial court below has concluded that "a 'responsible party['s]' signature is not legally binding in an admission agreement" as to the matters within the scope of the responsible party's authority. A nursing home may obtain consent to health care under N.C. Gen. Stat. 90-21.13 from an appropriate person as designated by the statute when the patient is unable to make or communicate her own decisions, and a nursing home can have a "responsible party" contract to be financially responsible for payment for services provided to a patient without any sort of authorization by the patient. We conclude only that a "responsible party" must have some form of legal authority to enter into an arbitration agreement on behalf of the patient for the arbitration agreement to be binding upon the patient. There is no undue burden on families or medical facilities from our recognition of the long-standing tenets of the laws of agency and contract which require some form of legal authority, which could include agency, guardianship or power of attorney, for one person to contract away the right of another person to seek legal redress in our court system. This decision in no way impairs a "responsible party's" ability to contract for needed medical services or payment for those services. This argument is overruled.

B. Estoppel

[2] Defendants next contend that Ms. Murphy's "estate is estopped from denying the validity of the contract executed on Ms. Murphy's

---

2. Defendants' reference to Ms. Munn as "responsible party" is correct, as the admission document identifies her as such. We note that the terminology of "responsible party" as used in the admission document generally is identifying a signator other than the "resident" as the party who will be financially responsible for payment for services rendered to the "resident." There is no indication in the record before us that Ms. Munn challenged her own personal liability under the admission document, although the issue of her personal liability for payment is not before us in this case.

MUNN v. HAYMOUNT REHAB. & NURSING CTR.

[208 N.C. App. 632 (2010)]

behalf." (Original in all caps.) However, defendants did not plead the affirmative defense of estoppel; accordingly, defendants may not argue this issue on appeal. *See King v. Owen*, 166 N.C. App. 246, 249-50, 601 S.E.2d 326, 328 (2004) ("As part of its argument under its first assignment of error, Chicago Title argues that plaintiffs are equitably estopped from denying their agreement to the arbitration provision. North Carolina Rules of Civil Procedure, Rule 8(c) requires that certain affirmative defenses, including estoppel and waiver, must be set forth affirmatively in a party's pleading. In its answer, Chicago Title pled eight separate defenses to plaintiffs' complaint, including laches and failure to mitigate damages. Neither estoppel nor waiver were pled as defenses by Chicago Title in this matter. The record before this Court is devoid of any indication that equitable estoppel was raised by Chicago Title before the trial court. Chicago Title cannot swap horses between courts in order to obtain a better mount on appeal.")

C. Ratification

[3] Defendants also contend that Ms. Murphy "ratified the arbitration agreement executed by her mother on her behalf by her actions and inaction after she came out of her coma-like state." (Original in all caps.) Again, defendants failed to make any allegation of ratification in its pleadings to the trial court, and therefore we will not consider this issue. *See Robinson v. Powell*, 348 N.C. 562, 566-67, 500 S.E.2d 714, 717 (1998) ("Ratification is an affirmative defense which must be affirmatively pled. Failure to raise an affirmative defense in the pleadings generally results in a waiver thereof. . . . . Defendants not having pled the affirmative defense of ratification in either his answer or his motion for summary judgment, the issue of ratification was not before the trial court. In fact, the Court of Appeals *sua sponte* raised the issue on appeal. Defendants' failure to assert ratification as an affirmative defense bars that issue being raised by him, or by the Court of Appeals, on appeal.")

D. Unconscionability

[4] Lastly, defendants contend that "plaintiff cannot establish procedural or substantial unconscionability of the arbitration agreement." (Original in all caps.) As we have concluded that Ms. Munn had no authority to act as the agent of Ms. Murphy when she signed the arbitration agreement, Ms. Murphy's estate is not bound by the agreement. Accordingly, we need not address any arguments by Ms.

Murphy as to unconscionability of the agreement or plaintiff's opposing arguments.

### V. Conclusion

We conclude that the trial court's findings of fact are fully supported by the evidence and its conclusions of law based upon these findings are correct. Therefore, we affirm the order of the trial court denying defendants' motion to compel arbitration and granting plaintiff's motion to dismiss defendants' claim for arbitration.

AFFIRMED.

Chief Judge MARTIN and Judge ERVIN concur.